N. Gordon PHILLIPS and Lauretta M. Phillips, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15890.

United States Court of Appeals Ninth Circuit.

Jan. 2, 1959.

A. L. Burford, Jr., Los Angeles, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Davis W. Morton, Jr., A. F. Prescott, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BARNES, HAMLEY and HAMLIN, Circuit Judges.

BARNES, Circuit Judge.

This is a petition for review of a Tax Court decision, decided adversely to petitioners. Int.Rev.Code of 1954, § 7482, 26 U.S.C.A. § 7482. Petitioner's wife is interested only as a signer of a joint return, and by reason of the California community property laws. The word "petitioner" herein refers to both husband and wife.

The deficiency determined was for the year 1951 and was the sum of $15,525.59. The amount thereof herein contested was and is the sum of $12,056.00. This sum is one-fourth of the proceeds of 320 shares of stock sold by petitioner in 1951, at which time he sold 10,890 additional shares. The proceeds from these additional shares are not here involved. The proceeds of the 320 shares were originally included in petitioner's 1951 return, but, by reason of subsequent events, are now sought to be excluded.

The facts are not disputed, but their legal effect is. Because the case was tried on a stipulation of facts, plus the limited testimony of petitioner N. Gordon Phillips, we adopt the Tax Court's summary of the evidence, as a fair statement. It is set forth in the margin.[1]

1. "N. Gordon Phillips and Lauretta M. Phillips, petitioners in these consolidated cases, are husband and wife residing in Beverly Hills, California. They filed a

The Tax Court likewise accurately sets forth the respective positions of the parties hereto. They are:

"The deficiencies set forth in the statutory notices are due to the reduction in the basis of the 11,210 shares of Gordon Oil Company stock sold and reported by petitioner. Petitioner does not contest this reduction in basis but contends that he is entitled to reduce the sales proceeds reported in his 1951 return by the

joint income tax return for 1951 with the then collector of internal revenue for the sixth district of California at Los Angeles, California. Petitioner, N. Gordon Phillips, will hereafter sometimes be referred to as petitioner, as Lauretta is only interested in the case by virtue of the community property laws of California and her liability under the joint income tax return for 1951.

"Petitioner organized and promoted the Gordon Oil Company, a California corporation organized on January 30, 1949. For his services and for the transfer of certain leasehold interests, he was to receive one-half of the stock of the said company. A permit was issued by the Corporation Commissioner for the State of California in March 1949, authorizing the issuance of 13,000 shares of stock to petitioner and the sale of an additional 13,000 shares at a par value of $10, and providing that all shares should be held in escrow and that petitioner should receive no dividends on his shares until the purchasers of shares for cash had been reimbursed for the full purchase price.

"Petitioner sold 1,790 shares of stock to other parties, and in March of 1949 the Corporation Commissioner consented to the transfer of said 1,790 shares within escrow to the names of such purchasers. In August 1949 a written instrument was executed by petitioner and G. W. Raichart under the terms of which petitioner purportedly agreed to give 'For promotional services rendered', when received by petitioner from escrow, 320 shares of the capital stock of the Gordon Oil Company.

"G. W. Raichart died on December 27, 1950, and shortly thereafter petitioner put through a transaction with a man named Kline wherein the latter agreed to purchase all of the stock of the Gordon Oil Company. On March 21, 1951, petitioner received 11,210 shares out of escrow (13,000 shares less 1,790 shares

amount of money received for the 320 shares of stock, which money he was obliged to refund in 1953, pursuant to the judgment of the California Courts.

"Respondent contends that the proceeds were received by petitioner under a claim of right without restriction as to their disposition, and they are taxable to petitioner in 1951, the year they were received and retained even though in a later

previously transferred) and on or about the same date sold them to Kline for $1,689,347. In August 1951, the Gordon Oil Company was dissolved, thereby extinguishing all of its outstanding shares.

"Petitioner treated all of the shares of stock and the proceeds received from the sale of stock as his own, reporting the gain from the sale on his 1951 income tax return.

"In February 1952 the widow of G. W. Raichart, as executrix of his will, brought an action in the Superior Court of California against petitioner for breach of contract and for conversion with respect to the 320 shares of stock which was the subject of the aforementioned instrument executed by petitioner and Raichart. Petitioner resisted the claim, asserting that the instrument executed by him and Raichart was never intended to be an agreement and was void; that it was executed without consideration; and in the alternative that the written agreement had been canceled and extinguished by an oral agreement between the parties. In December 1952 the Superior Court rendered a decision and judgment in favor of the plaintiff holding the defendant in that action, petitioner here, was guilty of conversion of 320 shares of the Gordon Oil Company stock. Since the stock had been disposed of a money judgment was awarded the plaintiff in that action. The District Court of Appeals, Fourth District of California, affirmed the judgment and an appeal to the Supreme Court of California was denied. Petitioner paid the judgment, together with interest, in the amount of $56,755.73 in 1953.

"In his 1953 return Phillips did not claim a deduction for the payment of the judgment. In 1953 his operations, without regard to the payment of the judgment, resulted in a loss and he had no taxable net income for that year."

year, in 1953, the petitioner was obliged to refund them."

It should be noted that in the limited cross-examination of petitioner N. Gordon Phillips the following colloquy, question and answer appear:

"Mr. Reed [counsel for petitioner Phillips]: He has already answered that question that he did consider it [the stock involved in the State court action] his own stock. The question has been asked and answered.

"The Court: I think if he's already testified that he did hold it, he has a claim of right. I didn't know that he had said it quite that plainly. * * * I mean, how did he hold the stock?

"Q. By Mr. Townsend [counsel for Commissioner]: Did you hold your [sic] stock as your own under a claim at that time?

"A. Yes, I did."

We adopt and confirm that portion of the Tax Court's opinion reading as follows:

"We agree with the respondent that the portion of the proceeds received from the sale of the 320 shares in 1951 was taxable income to the petitioner for that year even though he was later obliged to return the portion of the proceeds received from such sale. The 'claim of right' doctrine, which supports respondent, has its origin in North American Oil Consolidated v. Burnet, 286 U.S. 417 [52 S.Ct. 613, 615, 76 L.Ed. 1197]. The opinion explains the doctrine as follows:

" 'If a taxpayer received earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * '

"There is no need to go into a general discussion of the claim of right doctrine. It has been applied many times. See Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007; Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833; and Michael Phillips [v. C. I. R.], 25 T.C. 767, aff'd. 238 F.2d 473.

"The facts of this case bring it clearly within the claim of right doctrine. Petitioner treated all 11,210 shares of stock which he received from escrow as his own and he sold the stock in 1951 and treated the entire proceeds from such sale as his own. It was not until 1952 that a claim was filed against the portion of these proceeds representing the 320 shares claimed by Raichart's estate. Petitioner continued to claim his right to the proceeds from the sale of these 320 shares of stock. In what petitioner terms a 'hotly contested adversary proceeding' it was ultimately decided that petitioner's claim of right was invalid.

"Since petitioner retained the proceeds from the sale of the 320 shares of stock under claim of right without restriction as to the disposition of said proceeds, he is taxable in the year of sale, regardless of any infirmity in his title and despite the fact that he was obliged to refund the proceeds of said sale in 1953.

"Petitioner argues that judgments of state courts in matters of title to property must be respected and here the California State Court ruled the 320 shares belonged to Raichart's estate and no income tax can be exacted from petitioner on the proceeds of the sale of that stock. But petitioner realized income from the sale of this stock in 1951, which he claimed as his own and which he retained at the close of the year. The force of the California judgment compelling the pay-back is recognized and petitioner's complying with the mandate of the judgment

will give him a deduction from income in the year it is made.

■ "Petitioner's real argument is in effect an equitable appeal. Petitioner's operations were such that in 1953 when he paid the $56,755.73, he had no taxable income, and, he argues, unless he prevails here, he will be without remedy and respondent will be exacting a tax on income which he reported but was not allowed to retain. But a cardinal principle of Federal income taxation requires annual returns and accounting. Burnet v. Sanford & Brooks Co., 282 U.S. 359 [51 S.Ct. 150, 75 L.Ed. 383]. This principle requires the determination of income at the close of the taxable year without regard to the effect of subsequent events. One can admit the equities of the situation favor petitioner but this Court must decide the case according to the applicable law for the taxable year."

Estate of Bluestein, 15 T.C. 770, relied on by petitioner is not in point. It was decided on December 4, 1950. It relied on Freuler v. Helvering, 1935, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634. Subsequently, in United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560, decided March 26, 1951, the Supreme Court specifically held the Freuler case doctrine inapplicable to "claim of right" cases.[2]

■ Nor is the constructive trust rationale, urged by petitioner, here applicable, United States v. Lesoine, 9 Cir., 1953, 203 F.2d 123, 126–127; nor any theory of bailment, United States v. Iozia, D.C. S.D.N.Y., 1952, 104 F.Supp. 846.

The taxpayer here actually received the money proceeds from the sale of 320 shares of the stock in 1951. There were no restrictions on his claim of right to those proceeds. He treated the money as his in his tax return of that year. He vigorously fought a subsequent lawsuit to the highest court of his state, always claiming his right to such proceeds and the invalidity of the Raichart heirs claim to them. He testified before the Tax Court that he claimed such proceeds as rightfully his in 1951.

As was aptly stated in National City Bank v. Helvering, 2 Cir., 1938, 98 F.2d 93, 96:

"It would be intolerable that the tax must be assessed against both the putative tortfeasor and the claimant; collection of the revenue cannot be delayed, nor should the Treasury be compelled to decide when a possessor's claims are without legal warrant. If he holds with claim of right, he should be taxable as an owner, regardless of any infirmity of his title * * *."

Cf. also United States v. Lesoine, supra, and Healy v. Commissioner, 1953, 345 U.S. 278, 282–283, 73 S.Ct. 671, 97 L.Ed. 1007.

It must be recognized that had there been no claim by the Raichart heirs subsequent to 1951, there never would have been a change in the claim of right which Phillips first exercised in 1951, and reasserted continuously and vigorously thereafter until the final judgment against him in 1953. At that time, if his claim of right was faulty, then upon satisfaction of judgment, he was entitled to claim a loss in 1953. However, any loss to which he may have been entitled in 1953 does not alter or affect in any way the claim of right he had previously made, which was the basis of his 1951 liability.

That he cannot profit, taxwise, from his loss in 1953, (because of other previously existing losses) cannot change the

---

2. "Nothing in this language permits an exception merely because a taxpayer is 'mistaken' as to the validity of his claim. Nor has the 'claim of right' doctrine been impaired, as the Court of Claims stated, by Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, or Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752. The Freuler case involved an entirely different section of the Internal Revenue Code, and its holding is inapplicable here." Id., 340 U.S. at page 591, 71 S. Ct. at page 523.

legal liability arising from his ill-starred claim of right in 1951.

The petition is denied, and the Tax Court is affirmed.

■ We note there are two separate decisions, each in the same amount, one against N. Gordon Phillips and one against Lauretta M. Phillips, his wife. We assume there will not be any attempt on the part of the government to collect the deficiency twice. This point, although touched upon in the briefs, is not listed as a point on which appellants rely. However, we remand the matter to the Tax Court for the entry of one judgment in the total amount of the deficiency, constituting a joint and several liability of each taxpayer.