ROBERT E. CLEARY AND MILDRED W. CLEARY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75147. Filed July 20, 1960.

*Samuel J. Foosaner, Esq.*, and *Norman E. Schlesinger, Esq.*, for the petitioners.

*John J. Hopkins, Esq.*, for the respondent.

734

## OPINION.

TURNER, *Judge:* The question is whether for the years 1953, 1954, and 1955 income was distributable to Mildred from her father's estate so as to make such income her income. Petitioners contend that Mildred had renounced her bequest before any income was distributed from the estate and before the trustees determined that income could be distributed from the estate, and that the income was not hers. Respondent contends that prior to 1957, there was no clear, unequivocal renunciation by Mildred, and in any event there was no timely and valid renunciation.

Under the provisions of the will, Mildred during her life was entitled to the extent of $2,000 per year to one part or share of the net income of the property held in trust. And where, by the terms of a will, an individual is entitled for life to net income of the property held in trust, such individual thus becomes the owner of an equitable interest in the corpus of the property, which interest, in the absence of a valid restraint upon alienation, is present property alienable like any other property and by virtue of such interest the owner is entitled to enforce the trust and to obtain redress in case of breach. *Blair* v. *Commissioner*, 300 U. S. 5.

The decedent having died a resident of and his will and last testament having been probated in New Jersey, the law of that State

is applicable with respect to the timeliness and the validity of a renunciation.

It appears well settled that a devisee or legatee is not compelled to accept a devise or legacy. *Dare* v. *New Brunswick Trust Co.*, 194 Atl. 61; *Olsen* v. *Wright*, 181 Atl. 182; *In re Howe's Estate*, 163 Atl. 234. It appears equally well settled that there is a presumption of acceptance by a donee of a gift which is beneficial to him. *Yawger* v. *Yawger*, 37 N. J. Eq. 216. It also appears that in New Jersey if a devisee or legatee does not wish to accept a devise or legacy he is expected to reject it promptly or within a reasonable time after he has had notice of the devise or legacy. *Dare* v. *New Brunswick Trust Co.*, *supra*.

What is a reasonable time to be allowed for "renunciation" of a legacy by a legatee depends upon the facts of the particular case, "renunciation" meaning the act of giving up a right.

In February 1957, Mildred made a formal written statement addressed to the trustees of the estate which was designed to confirm a purported oral renunciation of her claim or right to any portion "of the specific sum of which [she] was named beneficiary" under the will of her father.   In *First National Bank of Portland, Executor*, 39 B.T.A. 828, it was indicated that a disclaimer of a beneficial interest in a trust may operate retroactively, but petitioners concede that this Court held in *Annie Inman Grant*, 11 T. C. 178, affd. 174 F. 2d 891, that a disclaimer may not operate retroactively so as to relieve the beneficiary of a tax on the share of income for prior years. Whether Mildred's written statement in 1957 is a renunciation, under New Jersey law, or could represent an assignment of her interest, as in *Blair* v. *Commissioner*, *supra*, we need not decide, since 1957 is a year subsequent to the years with which we are here concerned.

It is the claim of petitioners, however, that Mildred made an oral renunciation of her bequest in the early part of 1950. Our question accordingly is as to the effectiveness and timeliness of what she did in that year.

In 1950 the decedent had been dead 5 years and in each year, including 1945, the year in which the decedent died, the estate realized income which under the will, there being no dividends from Welsh Farms, Inc., one-third of which was to go to decedent's widow, was to be divided in 2 parts, and one part "to the extent" of $2,000 was to "be made over and paid to" Mildred, with any balance of said part to be used "for the care, maintenance, education and support" of Mildred's children.

Noting that under both the Internal Revenue Code of 1939, section 162(b),[2] and the Internal Revenue Code of 1954, section 652(a),[3] income which is required to be distributed currently to legatees, heirs, or beneficiaries must be included in computing the net income of the legatees, heirs, or beneficiaries, whether distributed to them or not, the petitioners contend that the estate had no income which was "required to be distributed" and which the decedent intended should be distributed, until after the oral renunciation by Mildred in 1950, and that such oral renunciation was timely and effective. In so contending, they argue that the decedent in his will had directed that his executors and trustees continue to operate the dairy business and intended that all of the assets of his estate be applied to the running of that business, to the end that it "could" produce dividend income with which to provide for his widow, his eight grandchildren and "a small bequest to his daughter Mildred," and that it was not until after several years of operation that the estate had income "available" for distribution or which was "required to be distributed," so that prior to 1950 there was no income for Mildred to renounce or disclaim, and that in fact "it was not until 1953, in view of the clear objectives expressed by the testator, that income from dividends derived from the earnings of Welsh Farms, Inc., were first made available to Mildred Cleary."

A difficulty with the contention is that the petitioners are attributing to the decedent intentions relating to the use and disposition of the income of his estate which are not to be found in his will. He did devise and bequeath the "rest, residue and remainder" of his estate to his executors and trustees "[t]o run, operate and continue" for the benefit of his estate any business or enterprise in which he might at the time of his death be interested, until such time as in

---

[2] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. &ast; &ast; &ast;

[3] SEC. 652. INCLUSION OF AMOUNTS IN GROSS INCOME OF BENEFICIARIES OF TRUSTS DISTRIBUTING CURRENT INCOME ONLY.

(a) INCLUSION.—Subject to subsection (b), the amount of income for the taxable year required to be distributed currently by a trust described in section 651 shall be included in the gross income of the beneficiaries to whom the income is required to be distributed, whether distributed or not. If such amount exceeds the distributable net income, there shall be included in the gross income of each beneficiary an amount which bears the same ratio to distributable net income as the amount of income required to be distributed to such beneficiary bears to the amount of income required to be distributed to all beneficiaries.

their opinion it should be for the best interest of his estate to dispose of the same, with the proceeds to become a part of his estate and subject to the trusts as in his will provided. Not only was there no provision that the income from such "rest, residue and remainder" of the estate be used in support and operation of the dairy business, but to the contrary, there was an unqualified direction that the net income to the extent of one-third of the dividends from Welsh Farms, Inc., be paid to Karen Welsh; that up to $2,000 of one of two parts of the remaining net income "be made over and paid" to Mildred, and the balance of such part "be used" for the care, maintenance, education and support of Mildred's children; and that similarly the second of the two parts of the net income "be used" for the children of Elizabeth. There was no provision that if the amount of the net income was small no distribution should be made. There was no provision for the accumulation of income by the executors and trustees. And more specifically, there was no provision which would permit any of the income to be used in the operation of the business of Welsh Farms, Inc. In short, the distribution and use of the net income as specified in the will was stated in mandatory terms, and no discretion with respect thereto was granted to the executors and trustees, and the distribution and use which was specified was not for the operation of Welsh Farms, Inc.

In *Frick* v. *Driscoll*, 129 F. 2d 148, where it was provided in the trust instrument that the trustees were "to pay and apply" the net income from the trust corpus to the named beneficiary during her natural life, and where the trustees had withheld from current trust net income moneys to pay real estate taxes which would arise in the next succeeding year, the court, citing *Freuler* v. *Helvering*, 291 U. S. 35, for the proposition that it is well settled that "whether trust income is distributable or not depends upon the trust instrument," held that "since no provision was made in the trust instrument * * * giving the trustee discretion to accumulate earnings," but to the contrary the instrument showed "clearly that the testator * * * intended the entire net income * * * to be distributed to the taxpayer," the court below was in error in holding that the trust instrument "gave the trustee discretion to accumulate income within the meaning of the applicable Revenue Statutes."

In the instant case, the facts show that the trust estate received taxable income in each and every year, beginning with 1945, and though the source of this income is not shown, it could, insofar as appears of record, have been in whole or in part rent on real estate belonging to decedent's estate and used by Welsh Farms, Inc., in its business. Since none of the income represented dividends on Welsh Farms stock, it was mandatory under the will that this income "be

regularly divided" into 2 parts and one part up to $2,000 "be made over and paid to * * * Mildred." It thus appears that for 5 years, from 1945 to 1950, the year of the claimed oral renouncement, she made no attempt to disclaim or renounce income which was hers and which by the terms of the will the executors and trustees had no authority, right, or power to withhold from her.

It is to be noted also that on April 29, 1946, Mildred had joined with the other executors in executing the New Jersey inheritance tax return, which reported that she was a beneficiary, with an interest in the estate of "$2,000 per year." This was approximately a year after her father had died. Such a reporting was, to say the least, an indication that under the will she had become vested with an equitable interest in the corpus of the estate up to $2,000 per year from one part of the income produced by the residue of the estate, as heretofore set forth.

Even absent such indicated recognition of the vesting in Mildred of the interest in her father's estate, it would appear that, under the decisions of the New Jersey courts, a period of 5 years would be considered unreasonable for an effective rejection of the bequest. See *Yawger* v. *Yawger, supra*, where it was held that a testamentary beneficiary who died a month after the testator's death had a reasonable time within which to make a choice of acceptance or rejection, and not indicating either, was presumed to have accepted the gift; also *In re Howe's Estate, supra*, where, under the circumstances of the case, an administrator could validly make a renunciation for the beneficiary-decedent, a delay of 4 months in filing a written disclaimer by the administrator was regarded as a failure to act within a reasonable period of time.

Although the testimony in the instant case is to the effect that the income of the Welsh estate was not distributed because it was needed by Welsh Farms, Inc., there is no showing as to what, in fact, was done with the income. Presumably it was accumulated. However, whatever was done with it currently, it is evident that Mildred participated therein by agreeing to nondistribution, accumulation, or its use by Welsh Farms, Inc., if in fact it was so used. It would thus appear that prior to 1950 Mildred had not only accepted her bequest of the equitable interest in the corpus of the estate, as pointed out heretofore, but during the 5-year period had either participated or acquiesced in the control over the income, which, being currently distributable, was under the applicable sections of both the 1939 Code and the 1954 Code taxable to her.

While relying strongly on *First National Bank of Portland, Executor, supra*, petitioners, as heretofore noted, have conceded, on brief, that under *Annie Inman Grant, supra*, a disclaimer may not operate

retroactively so as to relieve the beneficiary of tax on income for prior years. Furthermore, the facts in the *First National Bank of Portland, Executor* case show that there the beneficiary at or immediately after the death of the testatrix had orally disclaimed his interest in the estate, whereas in the instant case it was 5 years before Mildred orally indicated she wanted her share of the income to be paid to her for the benefit of her children. In *Annie Inman Grant*, where the decision was for the respondent and against the taxpayer, the trust income for each year was to be paid to the taxpayer beneficiary, but only if payment was requested by the end of the year, and if request was not so made the income was to be otherwise disposed of, as provided by the will. In short, it was not available to the beneficiary after the end of the current year unless affirmative claim was made therefor within that year. In the instant case, the will carried a specific mandate that "one part of the net income, as aforesaid, to the extent of Two Thousand ($2,000.00) Dollars per year, *shall be made over and paid to*" Mildred. (Emphasis supplied.) The income to that extent belonged to Mildred. It was hers to take and to do with as she saw fit, and it continued to be hers for the taking. There was no divestment by the passage of time.

We are also of the view that aside from any prior vesting in Mildred of an equitable interest in the corpus of the decedent's estate, and even if we assume that timely renunciation could still have been made in 1950, that neither her conversation with her husband in 1950 nor the writing of January 1953, would have been, under New Jersey law, an effective renunciation of her bequest. In New Jersey, a renunciation must be made by a positive, overt act. *In re Howe's Estate, supra; Lawes* v. *Lynch*, 72 A. 2d 414. Her direction and authorization with respect to the distribution of the income was, as we view it, no more than a direction as to the manner in which distribution of her own income should be made. In short, it was no more than a direction that when her share of the income should in fact be distributed that it be paid to her as trustee for her children. See and compare *Harrison* v. *Schaffner*, 312 U. S. 579. Under the pertinent Code provisions, *supra*, the income was taxable to her as earned, whether or not distributed.

The facts being as they are, we conclude and hold that Mildred made no timely and effective renunciation of her bequest, and for 1953, 1954, and 1955 one share of the net income of the estate for each such year up to $2,000, as heretofore set forth, was her income taxable to her, whether or not distributed, and it matters not that when distribution was in fact made that the checks were, at her direction, made payable to her as trustee for her children.

*Decision will be entered under Rule 50.*