KATHRYN S. FULLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79728. Filed October 31, 1961.

*Warren W. Grimes, Esq.*, for the petitioner.
*Max J. Hamburger, Esq.*, for the respondent.

148

152

**OPINION.**

OPPER, *Judge:* Respondent's determination of a gift tax deficiency for the year 1956 is bottomed on section 2511 of the Internal Revenue Code of 1954, which provides that the gift tax "shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." [1]  Section 25.2511–1(c), Gift Tax Regs., provides as follows:

---

[1] This language of section 2511 is taken from section 1000(b), I.R.C. 1939, which in turn directly derived from section 501(b) of the Revenue Act of 1932.  The first gift tax provisions appeared in section 319 of the Revenue Act of 1924, which provided for a tax on "the transfer * * * by gift * * * of any property * * * whether made directly or indirectly * * *."

SEC. 2511. TRANSFERS IN GENERAL.

(c) The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. * * * Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decendent [sic] (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), a refusal to accept ownership does not constitute the making of a gift *if the refusal is made within a reasonable time after knowledge of the existence of the transfer*. The refusal must be unequivocable [sic] and effective under the local law. *There can be no refusal of ownership of property after its acceptance.* Where the local law does not permit such a refusal, any disposition by the beneficiary, heir, or next-of-kin whereby ownership is transferred gratuitously to another constitutes the making of a gift by the beneficiary, heir, or next-of-kin. * * * In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property *within a reasonable time after learning of the existence of the transfer*, he will be presumed to have accepted the property. * * * [Sec. 25.2511–1(c), Gift Tax Regs. (1958–2 C.B. 627, 643) ; emphasis added.]

The foregoing regulation was promulgated in 1958 but provides that: "The regulations are applicable to gifts made during the calendar year 1955 and subsequent calendar years." *Op. cit.* 627. The authority of the Commissioner to issue regulations with retroactive effect can no longer be questioned.[2] *Helvering* v. *Reynolds*, 313 U.S. 428 (1941).

Under the decedent's will the petitioner was entitled to a five-eighths share of the trust income for life and each of her three sons was entitled to a one-eighth share. She was also given a life estate in the family home, to the upkeep of which a portion of the total income was to be devoted. After her renunciation of three-eighths out of her five-eighths share, each of her sons received an additional one-eighth share of the trust income.

The parties are apparently in agreement that in cases where no renunciation is possible, as, for example, where the State law permits none, a gift to the second taker is made by the beneficiary who purports to renounce. *Hardenbergh* v. *Commissioner*, 198 F. 2d 63 (C.A. 8, 1952), affirming 17 T.C. 166 (1951), certiorari denied 344 U.S. 836. There also appears to be no dispute that under Pennsylvania law, a legatee may renounce under certain circumstances, that such renuncia-

---

[2] "The fact that the regulation was not promulgated until after the transactions in question had been consummated is immaterial. * * * The magnitude of the task of preparing regulations under a new act may well occasion some delay. To hold that respondent [the taxpayer] had a vested interest in a hypothetical decision in his favor prior to the advent of the regulations would introduce into the scheme of the Revenue Acts refined notions of statutory construction which would, to say the least, impair an important administrative responsibility in the tax collecting process.

"Hence, the regulation governs this case * * *." (*Helvering* v. *Reynolds,* 313 U.S. 428, 433.)

tion must be in writing, and that here petitioner signed a document purporting to be a renunciation and disclaimer. The only real questions are whether proceedings in the local Orphans' Court were such that we may make no independent judgment on the issues to be decided here. Those issues in essence are, as to the gift tax, by what means petitioner's sons acquired their interests, and, as to the income tax, when.

Without considering such questions as whether the Orphans' Court adjudication was nonadversary, a consent decree, or even collusive, *Stallworth's Estate* v. *Commissioner*, 260 F. 2d 760 (C.A. 5, 1958), affirming on this point a Memorandum Opinion of this Court; cf. *Freuler* v. *Helvering*, 291 U.S. 35 (1934) ; *Blair* v. *Commissioner*, 300 U.S. 5 (1937), and giving full effect to all that the local court decided, see *Gallagher* v. *Smith*, 223 F. 2d 218 (C.A. 3, 1955), the most that can be said is that it validated the confirmation of a renunciation by petitioner of part of her interest in her husband's estate, and that, on the face of the local decree itself, this renunciation could not even have been attempted until late in 1955 and presumably did not become effective until executed and confirmed by her in 1956. The Pennsylvania statute provides the testamentary gift "may be released or disclaimed, either with or without consideration, by *written instrument* signed by the person possessing the * * * interest and delivered as hereinafter provided * * *." Pa. Stat. Ann. tit. 20, sec. 301.3 (Purdon 1950). (Emphasis added.) At least there is nothing in the Probate Court proceedings, which did not occur until 1956, even purporting to adjudicate the time when any renunciation may have taken place, and petitioner has wholly failed to prove that any act of hers prior to 1956 was effective to "renounce" or transfer her interest.

On whatever prior date, if any, petitioner may have orally disclaimed, it seems clear that the first written document was a "Confirmation of Release and Disclaimer," dated February 8, 1956. It is upon this "confirmation" that the Orphans' Court approved the accounting of the trustees for the period beginning January 1, 1956, using, in part, the following language:

DISTRIBUTION IS THEREFORE AWARDED AS FOLLOWS:

\*        \*        \*        \*        \*        \*        \*

To Kathryn S. Fuller, Edward L. Fuller, Mortimer B. Fuller, Jr. and Henry S. Fuller, Trustees, for further administration * * * under the terms and provisions of and for the purposes set forth in the last will and testament * * * of the decedent, *as modified by the confirmation of release and disclaimer* of Kathryn S. Fuller * * *. [Emphasis added.]

It seems evident that there was no adjudication by the State court as to the date when petitioner disclaimed, but, if anything, the implica-

tion is that this occurred only by reason of the confirmation of disclaimer of February 8, 1956.

By the time of the "renunciation," the administration of the estate had continued for almost a quarter century, during all of which petitioner had accepted, directly or indirectly, the benefits conferred upon her by the will.[3] Certainly such a "renunciation," however convenient for eliminating family controversy, could not by any stretch of language be said to have been made within a "reasonable time." To be effective for gift tax purposes under respondent's regulations, this requirement must be met. And it would be difficult to conclude that petitioner's prior conduct had not constituted an "acceptance" within the meaning of the same regulation. We cannot say that his regulation is contrary to the statute or unreasonable in either respect. See *Commissioner* v. *South Texas Co.*, 333 U.S. 496 (1948).

It follows that this becomes a situation in which, as the opinion in *Gallagher* v. *Smith, supra,* recognizes, the final result is controlled by the Federal taxing statutes and not by State law.[4] The gift tax attaches here regardless of the validity of any renunciation under Pennsylvania law because whatever renunciation there may have been did not, within the provisions of the statute and regulations, take place under such circumstances as to eliminate the applicability of gift tax to petitioner in having at least "indirectly" made a gift in 1956. We conclude that the gift tax deficiency was correctly determined.

The controversy as to income tax relates to 1955. Any disputes as to 1956 and 1957 have been expressly eliminated. All during 1955 petitioner had "unfettered command" over her distributable share

---

[3] The will directed that a sum not in excess of $50,000 a year be devoted to the upkeep of "Overlook," the residence in which decedent left petitioner a life estate. "The decedent gave his widow a life estate in Overlook. That did not depend upon any act of the executors. They had no right to interfere with her use of the property where, as here, the personal property was ample for the payment of all debts of the decedent. * * * If they managed Overlook they did so as agents for the widow and not in their official capacity as executors of the decedent." *Estate of Mortimer B. Fuller,* 9 T.C. 1069, 1074 (1947), affirmed per curiam 171 F. 2d 704 (C.A. 3, 1948), certiorari denied 336 U.S. 961. There is nothing in the record to indicate how much of the estate income was expended for the purposes described. For all that is shown, very much more than $50,000 a year could have been put to that use, and if it was, it was purely for the benefit of petitioner. Certainly if the facts are otherwise, it was petitioner's burden to produce evidence to that effect. Furthermore, it is conceded that the income of the estate throughout this period was partly devoted to reducing the indebtedness of the estate. This would be a direct benefit to petitioner who, as life tenant of five-eighths of the residual income, was obtaining the benefit of having the corpus, from which her income would be derived, continually increased.

[4] "One group of federal tax cases refuses to give state decisions conclusive effect in situations where Congress has imposed a federal criterion with respect to the taxability of income or property * * *. For example, in ascertaining whether claims asserted against an estate 'were contracted bona fide and for an adequate and full consideration in money or money's worth' ? * * * the Tax Court is not bound by a state court decision with respect to whether the federal test of deductibility has been met." (Footnote omitted.) *Gallagher* v. *Smith,* 223 F. 2d 218, 222 (C.A. 3, 1955).

of the estate.[5]  The estate tax returns for all years prior to 1955 undoubtedly reported her distributable interest as the five-eighths of the residue which the will gave her.  See *Estate of Mortimer B. Fuller*, 9 T.C. 1069 (1947).  This was then her taxable income "whether distributed or not."  Secs. 661, 662, I.R.C. 1954.  There was no change in this situation throughout the entire year 1955, nor by the end of that year.  At least, if these were not the facts, petitioner has borne no burden of showing they were not.  And it would be of no consequence if conditions should retroactively shift in some later year.  See *Robert L. Daine*, 9 T.C. 47 (1947), affd. 168 F. 2d 449 (C.A. 2, 1948) ; *Grandview Mines*, 32 T.C. 759 (1959), affd. 282 F. 2d 700 (C.A. 9, 1960) ; *Healy* v. *Commissioner*, 345 U.S. 278 (1953).  "[A] cardinal principle of Federal income taxation requires annual returns and accounting.  *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359.  *This principle requires the determination of income at the close of the taxable year without regard to the effect of subsequent events.*"  *N. Gordon Phillips*, 29 T.C. 47, 50 (1957) affd. 262 F. 2d 668 (C.A. 9, 1959).  (Emphasis added.)

It follows that solely by her action after the end of 1955 in participating in the "family settlement" and executing the "confirmation" did the 1955 income, which was already hers, become the property of her sons.  This of course would be binding on her, and presumably be enforcible in the State courts.  But for tax purposes it would not exclude it from her income nor change it into the income of someone else.  *Helvering* v. *Clifford*, 309 U.S. 331 (1940) ; *Helvering* v. *Horst*, 311 U.S. 112 (1940) ; *Corliss* v. *Bowers*, 281 U.S. 376 (1930).

The extent to which petitioner's reliance on the accounting decree in the Orphans' Court is misplaced is illustrated by the following from petitioner's brief:

> There was no family settlement of the proceedings involving the Trustees' First and Partial Account wherein the state court made its judicial determination that Mrs. Fuller's renunciation was valid.  The procedure required by Pennsylvania law on Trustees' Accounts was followed.  *This account was filed on April 28, 1956, and was a complete and accurate accounting by the Trustees for the period January 1, 1956 to March 31, 1956.*  [Emphasis added.]

The Orphans' Court, as these statements show, did not have before it and did not purport to pass upon the distribution of estate income prior to January 1, 1956.  Whatever the sons received and petitioner relinquished with respect to 1955 income came only by way of family

---

[5] As the history of this litigation shows, respondent applied for an order requiring petitioner to file separate petitions as to the gift tax and income tax deficiencies.  In persuading the Court to deny this motion, petitioner's counsel represented that:

* * * these two cases are inter-related, almost inseparable. * * *

If it was a '56 disclaimer, then the government's income tax case for '55 would probably be sustained *based upon the distribution of '55 income.*  [Emphasis added.]  It may be that, on that ground alone, this proceeding must be regarded as presenting only one issue, that the gift tax and income tax controversies are identical, and that our decision of a 1956 disclaimer disposes of both.

settlement and was no different than any other instance of the assignment of income by one person to another.

The situation in *Gallagher* was quite different and the opinion there indicates that on the present facts a different conclusion would have been reached. It distinguishes "cases where income is taxed because, although disposed of under state law, it remains under the taxpayer's 'unfettered command.' In such case a state decision as to the legal rights of the parties is not controlling as to the incidence of the federal income tax." *Gallagher* v. *Smith, supra* at 222.

In *Gallagher*, except for the first year which was not in controversy, the taxpayer had consistently received only her diminished share of trust income and that amount and no more had been reported in her income tax returns, and presumably the balance had been received, reported, and taxed as income of the other beneficiaries. On the contrary, here, as in *Falk* v. *Commissioner*, 189 F. 2d 806, 808 (C.A. 3, 1951), affirming 15 T.C. 49 (1950), certiorari denied 342 U.S. 861, throughout the year in controversy, "designation and direction was left to the absolute discretion of the petitioner. * * * [H]e was unfettered in his control of the trust income. This is ample to bring it within his own taxable income * * *."

For the foregoing reasons, giving full effect to the proceedings in the Orphans' Court, we think petitioner was taxable on five-eighths of the distributable net income in 1955 instead of the two-eighths of the lesser sum of distributable net income which she reported. The parties are now in agreement as to the correct distributable net income for 1955 and we do not understand that petitioner is contesting respondent's determination of value if, as we hold, petitioner made a gift in 1956.

To take account of adjustments not in controversy,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

———

MULRONEY, *J.*, specially concurring: I agree with the treatment as to the income tax issue and concur in the result as to the gift tax issue. I would reach the latter result by simply holding that petitioner in 1956 executed an instrument that evidenced and accomplished a gratuitous transfer of property to her sons. Heirs and beneficiaries of an estate always hold transferable title or the right to receive title which constitute "property" within the meaning of the gift tax statute.[1] Disclaimers or renunciations by heirs and beneficiaries result in gifts, direct or indirect, because, by the opera-

———

[1] In *Sanford's Estate* v. *Commissioner*, 308 U.S. 39, the Supreme Court said: "When the gift tax was enacted Congress was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title."

tion of the laws of intestacy or clauses in the wills, title or the right to receive title is transferred or passes to known receivers. It is as if the heir or beneficiary executed a gratuitous assignment of his interest to named parties. This is sufficient under the broad coverage of the gift tax statute.[2]

The disclaimer or renunciation is not made a gift within the gift tax statute by reason of the fact that the heir or beneficiary waits a long time (even if it is almost a quarter of a century) before executing it. Timing has nothing to do with it. The timing might be something to consider when the effectiveness of the instrument to divest the maker of his property interest is the issue—such as its effectiveness as against the claims of creditors of the heirs or beneficiaries. Obviously, it is not a factor when the issue is the tax upon the admitted passage of the interest of the heir or beneficiary to others, resulting from the disclaimer. I would hold the gift tax applies merely because the disclaimer evidences an accomplished gratuitous transfer under the statute.

I agree that under the Commissioner's regulation (sec. 25.2511–1(c)), especially the part added in 1958, the timing of the execution of the instrument as well as its validity under State law are to be considered. The majority specifically approves this regulation, in this, its first Court test. I do not share that approval.

---

[2] In *Smith* v. *Shaughnessy*, 318 U.S. 176, the Supreme Court said:

> * * * The language of the gift tax statute, "property * * * real or personal, tangible or intangible", is broad enough to include property, however conceptual or contingent. And lest there be any doubt as to the amplitude of their purpose, the Senate and House Committees, reporting the bill, spelled out their meaning as follows:
> "The terms 'property,' 'transfer,' 'gift,' and 'indirectly' [in sec. 501] are used in the broadest sense; the term 'property' reaching every species of right or interest protected by the laws and having an exchangeable value."[4]

> [4] Senate Report No. 665. 72d Cong., 1st Sess., p. 39 House Report No. 708, *supra,* p. 29.