PAULINE KEINATH, TRANSFEREE OF ASSETS OF CARGILL MACMILLAN, TRANSFEROR, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4646–49—4650–69.   Filed May 22, 1972.

---

[1] Cases of the following petitioners are consolidated herewith: Cargill MacMillan, Jr., transferee of assets of Cargill MacMillan, transferor, docket No. 4647–69; Whitney MacMillan, transferee of assets of Cargill MacMillan, transferor, docket No. 4648–69; Pauline W. MacMillan, docket No. 4649–69; and Cargill MacMillan 1967 Trust, Cargill MacMillan, Jr., Whitney MacMillan, and Wheelock Whitney, trustees, transferee of assets of Cargill MacMillan, transferor, docket No. 4650–69.

*John W. Windhorst* and *Phillip H. Martin*, for the petitioners.
*Jay B. Kelly*, for the respondent.

OPINION

IRWIN, *Judge:* Respondent determined the following deficiencies in the gift taxes of petitioners:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 4646–69 | Pauline Keinath | $152, 344. 90 |
| 4647–69 | Cargill MacMillan, Jr | 152, 344. 90 |
| 4648–69 | Whitney MacMillan | 152, 344. 90 |
| 4649–69 | Pauline W. MacMillan | 152, 344. 90 |
| 4650–69 | Cargill MacMillan Trust | 152, 344. 90 |

After settlement of another issue the single issue remaining is whether a purported disclaimer of a testamentary bequest by Cargill MacMillan in 1963 was a gratuitous transfer of property under section 2511(a) of the Internal Revenue Code of 1954.

All of the facts have been stipulated and are found accordingly.

Petitioners Pauline Keinath (Pauline), Cargill MacMillan, Jr. (Cargill, Jr.), and Whitney MacMillan (Whitney) are individuals whose address at the time the petitions herein were filed was c/o 1200 Cargill Building, Minneapolis, Minn. Respondent would make these petitioners responsible for payment of the deficiency by virtue of being transferees of the alleged gift made by Cargill MacMillan. At the time the petitions herein were filed Cargill, Jr., and Whitney were residents of Minneapolis, Minn., while Pauline was a resident of St. Louis, Mo.

Petitioner Cargill MacMillan 1967 Trust had its situs in Minneapolis, Minn., and respondent alleges it is responsible for payment of the deficiency by virtue of being a transferee of Cargill MacMillan.

Pauline W. MacMillan was the spouse of Cargill MacMillan, and

at the time the petitions herein were filed her address and residence were in Minneapolis, Minn. The alleged deficiency of Pauline W. Mac-Millan stems from the mutual consents that she and her husband filed to treat gifts made by one spouse to third parties as made one-half by each spouse.

John H. MacMillan, who was the father of Cargill MacMillan and John H. MacMillan, Jr., died testate on October 20, 1944. On November 20, 1944, his will was admitted to probate by the Probate Court of Hennepin County, Minn. Most of the Estate of John H. MacMillan was devised and bequeathed to a trust created by Article III of the will, the terms of which are the following:

ARTICLE III. All the rest, residue, and remainder of my estate of whatsoever nature and wheresoever situate, together with the principal and income of any property over which I may have the power of appointment, I give, devise, and bequeath to my sons John H. MacMillan, Jr. and Cargill MacMillan, as trustees, in trust for the following uses and purposes:

(a) To pay the net income therefrom in convenient installments to my said wife for the term of her natural life.

(b) Upon the death of my said wife the trust hereby created shall thereupon terminate and the principal thereof, together with any income therefrom subsequent to the death of my said wife, shall be distributed, share and share alike, between my said two sons; should either of my said sons die prior to the termination of this trust the share which such son would have received if then living shall be distributed per stirpes and not per capita among his children and among the lawful issue of a deceased child or children of his, if any, and if there shall then be no such child or children or lawful issue of a deceased child or children of such deceased son, such share shall be distributed to my remaining son if then living, and if not so living then per stirpes and not per capita to his children and to the lawful issue of any deceased child or children of his; and if there should be then living neither of my sons nor any child or children of either of them nor any lawful issue of any deceased child or children of either of them, then to my heirs at law determined according to the intestate laws of the State of Minnesota then in force.

(c) If either of my sons should die, become incapacitated, or refuse to act as trustee hereunder, prior to the termination of this trust, the remaining son shall be the sole trustee hereunder, and in the event of such death, incapacity, or refusal to act as such trustees by both of my said sons then a trustee shall be appointed hereunder by a court of competent jurisdiction.

The trust established by the will became qualified in the District Court of Hennepin County, Minn., and John H. MacMillan, Jr. (John, Jr.), and Cargill MacMillan (Cargill) became the original trustees. John, Jr., died in 1960 survived by three children. After John, Jr.'s death Cargill served as sole trustee. At no time did Cargill receive or accept any income or principal from the trust. The parties agree that as a result of his father's will Cargill had a vested remainder in one-half of the trust subject to divestiture only if he should predecease the life beneficiary of the trust.

On March 28, 1963, Edna MacMillan, widow of the testator and life beneficiary of the trust, died survived by her son Cargill, his three children, Pauline, Cargill, Jr., and Whitney, and the three children of her son John, Jr. Neither Cargill nor John, Jr., had any children who were deceased but who left issue surviving Edna Mac-Millan.

On May 20, 1963, Cargill executed an instrument entitled "Disclaimer" which contained the following provisions in part:

WHEREAS, under the terms of Article III of said trust instrument, the undersigned would, after his mother's death, except for this Disclaimer, have succeeded to a one-half (½) beneficial interest in the remainder of said trust, but in the event of his death prior to that of his mother, said one-half (½) beneficial interest in the trust or trust property would have passed to the issue of the undersigned who survive said Edna C. MacMillan, per stirpes, free and clear of trust, and

\* \* \* \* \* \* \*

Now, THEREFORE, in consideration of the premises, the undersigned does hereby finally and irrevocably disclaim, renounce, remise and refuse to accept any beneficial interest in said trust or trust assets of any nature, real, personal or otherwise, including both principal and accrued or accuring income thereof, which now or hereafter would be effectively vested in him under the provisions of Article III of said last will and testament of John H. MacMillan, were it not for the execution of this Disclaimer, with the understanding that all right, title and interest in said one-half (½) interest in the trust or trust property will pass to his issue who survive said Edna C. MacMillan, per stirpes, this Disclaimer to become effective immediately upon, but not before, its filing with the District Court for the Fourth Judicial District, Hennepin County, Minnesota, in the proceeding entitled: "In the Matter of the Trusteeship under the Last Will and Testament of John H. MacMillan, Deceased," therein and maintained under District Court File No. T–2078.

On August 15, 1963, Cargill as trustee of the trust filed a petition with the District Court of Hennepin County for an order. The petition generally recited the history of the testamentary trust of John H. MacMillan. In particular, it stated that Cargill was considering filing a disclaimer of his beneficial interest in the remainder of the trust and that Cargill believed that such disclaimer would result in the devolution of his share of the trust to his three children as if he had predeceased the life beneficiary. The petition then asked the court to examine the applicable law and construe the trust instrument taking into consideration the disclaimer and give orders for the distribution of the assets of the trust.

On September 6, 1963, Cargill executed a certain document in his capacities as both a trustee and an individual. The document was designated "Power and Authorization by Trustee," and was filed with the court on September 11, 1963. This document appointed A. J. James as Cargill's personal attorney and authorized James to file or decline

to file with the District Court of Hennepin County the disclaimer of his personal beneficial interest in said trust. The disclaimer was also filed with the Hennepin County District Court on September 6, 1963.

On September 6, 1963, the District Court entered an order which, after dealing with other matters raised by the petition and reviewing the law, made the following orders with respect to Cargill's disclaimer:

A. That said disclaimer of Cargill MacMillan has been duly made and filed and is valid, timely and effective; that said Cargill MacMillan has never accepted any beneficial interest in the trust estate or dominion over the property thereof and that he never became a person having a beneficial interest in the trust estate;

B. That said decedent's intention as manifested in the trust instrument was to substitute immediate alternate takers in the event of the termination or failure of any prior beneficial interest in the trust estate, whether through the death of the person otherwise so interested, his disclaimer, a forfeiture or illegality, or for any other cause;

C. That the trust instrument demonstrates an intention and should now be applied and given effect in the same manner as though the death of said Cargill MacMillan had occurred immediately prior to the death of said Edna C. MacMillan;

D. That there is now a vesting of the beneficial interests in the trust estate effective as of the date of the death of said Edna C. MacMillan, in the decedents six (6) grandchildren in equal shares, namely, said John Hugh MacMillan III, said William Duncan MacMillan, said Marion MacMillan Sontheim, (the children of said John H. MacMillan, Jr.) and said Cargill MacMillan, Jr., said Whitney MacMillan and said Pauline MacMillan Keinath, (the children of said Cargill MacMillan), under and by virtue of the terms of the trust instrument herein; * * *

The fair market value of the property of the trust distributed pursuant to the order to Cargill's children, one-third thereof to each, was $669,797.63.

On August 17, 1967, Cargill transferred property to the Cargill MacMillan 1967 Trust. This property included municipal and U.S. Government bonds in the face amount of $361,000, life insurance policies whose face amount exceeded $1,500,000, stock, real estate, and other property.

Cargill died on October 17, 1968, at the age of 68, leaving no estate for probate and no estate fiduciary representative.

Section 2511(a), relating to the gift tax, provides the following:

(a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

The statute is couched in broad language which reflects Congress' intent to tax gifts in the "broadest and most comprehensive sense * * * regardless of the means or the device employed in its accomplishment." H. Rept. No. 708, 72d Cong., 1st Sess., pp. 27–28 (1932). On the other hand, it is recognized that a donee of a bequest or gift cannot be compelled to accept property that he does not want and that the donee can disclaim the gift without gift tax liability even though the effect of the disclaimer is to pass the property to another person. Sec. 25.2511–1(c), Gift Tax Regs.; *Brown* v. *Routzahn*, 63 F. 2d 914 (C.A. 6, 1933), certiorari denied 290 U.S. 641 (1933). Section 25.2511–1(c), Gift Tax Regs., sets forth the circumstances under which a disclaimer can be made:

(c) The gift tax also applies to gifts indirectly made. * * * Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocable and effective under the local law. There can be no refusal of ownership of property after its acceptance. * * * In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property. * * *

Although the parties have devoted the greatest part of their briefs to explicating the law of Minnesota and other jurisdictions in order to help us determine whether Cargill's purported disclaimer in 1963 was valid under local law, they have raised a point-counterpoint of other arguments. In addition to arguing that the disclaimer was valid, petitioners contend that there is no independent Federal test of the validity of a disclaimer, either in case law or the regulations, which limits the effect of a disclaimer which is valid under local law for gift tax purposes. Respondent counters that regardless of the validity of the disclaimer under local law it was not made within a reasonable time after Cargill learned of the bequest as is required by the regulation. Petitioners answer that the reasonable time period cannot include the period where the bequest was defeasible and that Cargill made his disclaimer a short time after the bequest to him became indefeasible.

The parties are agreed that there is no decision of the highest court of Minnesota which would indicate whether the disclaimer was effective under local law in this case and that we are not bound by the decision of the District Court of Hennepin County. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967). We probably could wade through the morass of case law from other jurisdictions and discover the

Minnesota rule; however, we believe that we can decide this case on a less precarious ground.

In *Kathryn S. Fuller*, 37 T.C. 147 (1961), which also dealt with a disclaimer (called therein a renunciation), we stated:

Certainly such a "renunciation," however convenient for eliminating family controversy, could not by any stretch of language be said to have been made within a "reasonable time." To be effective for gift tax purposes under respondent's regulations, this requirement must be met. And it would be difficult to conclude that petitioner's prior conduct had not constituted an "acceptance" within the meaning of the same regulation. We cannot say that his regulation is contrary to the statute or unreasonable in either respect. See *Commissioner* v. *South Texas Co.*, 333 U.S. 496 (1948).

It follows that this becomes a situation in which, as the opinion in *Gallagher* v. *Smith, supra*, recognizes, the final result is controlled by the Federal taxing statutes and not by State law.[4] The gift tax attaches here regardless of the validity of any renunciation under Pennsylvania law because whatever renunciation there may have been did not, within the provisions of the statute and regulations, take place under such circumstances as to eliminate the applicability of gift tax to petitioner in having at least "indirectly" made a gift in 1956. We conclude that the gift tax deficiency was correctly determined. [Footnote omitted. 37 T.C. at 155.]

In *Kathryn S. Fuller, supra*, the petitioner was the life beneficiary of five-eighths of the income of a testamentary trust established in 1931. Her three sons were each one-eighth beneficiaries. In 1956, after having received income from the trust for over 25 years, petitioner renounced three-eighths of her five-eighths share, and each of her sons began receiving an additional one-eighth share. The local Orphans Court approved the renunciation and the additional distributions to the sons. The facts of *Kathryn S. Fuller* are admittedly different from those of the present case; however, these differences do not vitiate the case, as petitioners contend, as authority for deciding the present case.

Petitioners first argue that unlike Cargill the petitioner in *Kathryn S. Fuller* received income for over 25 years from the trust and thus accepted her gift before renouncing it. We think that this distinction is immaterial. Although Cargill's enjoyment of his remainder was to be postponed until his mother's death, this remainder was vested from the time of the creation of the trust. Cargill failed to reject his interest while knowing for nearly 19 years that it would be valuable and beneficial to him. Accordingly, we believe that Cargill accepted ownership of his interest in the trust.

We do not read *Kathryn S. Fuller* as resting upon Mrs. Fuller's acceptance of income from the trust but upon her acceptance of her interest in the trust. In addition, Mrs. Fuller's receipt of income was only one fact that we used in testing her conduct against section 25.2511–1(c) of the Income Tax Regs. to determine whether her disclaimer should be given effect for gift tax purposes. We approved the

two-part test of the regulation—that the disclaimer be valid under local law *and* made within a reasonable time after the disclaimant learns of the transfer—and found that Mrs. Fuller failed to satisfy the "reasonable time" part.

Petitioners also claim that to the extent that *Kathryn S. Fuller* approves the "reasonable time" part of the regulation and applies it as a separate test the case is dictum and should not be followed. We fail to comprehend this argument. Although it may have been possible to decide the case on some other grounds as petitioners suggest, the validity and construction of section 25.251–1(c) of the regulations were certainly properly before us.

We reject petitioners' other two arguments as fanciful. First, petitioners contend that *Robert E. Cleary*, 34 T.C. 728 (1960), supports the rule that in determining the validity of a disclaimer State law is solely determinative. We find nothing in that opinion to support such a contention. Second, petitioners claim that our use of section 25.2511–1(c) of the regulations as the ground for decision in *Fuller* can no longer be considered precedent because we were merely trying to "skirt" problems caused by the decision of the local court which have been eliminated by the Supreme Court's decision in *Commissioner* v. *Estate of Bosch, supra.* In *Fuller* as in this case the answer to the question of the validity of the disclaimer under State law was less than apparent while it was clear that the disclaimer was not made within a reasonable time. We were merely deciding the case on the surest possible ground.

The probity of the regulation and of our decision in *Kathryn S. Fuller* is amply demonstrated by this case. For nearly 19 years Cargill knew that if he survived his mother he would receive at least one-half of the corpus of the trust. He also knew, because he was a trustee of the trust, that receipt of the trust assets would be beneficial rather than onerous. Petitioners brought out no factor at trial which prevented Cargill from making a disclaimer of the remainder within a reasonable time after the creation of the trust. We can only assume that his reason for waiting to disclaim until his mother's death was his inability to determine whether he would prefer receiving the assets himself or permit his children to get them at the termination of the trust.

As we have noted previously, section 2511 was intended to reach broadly to gifts of every type. The exception from taxation for disclaimers was designed to permit a donee to avoid receiving an unwanted gift or bequest within a reasonable time after learning of the gift or bequest; it should not be used as an estate-planning and tax-avoidance tool. On the facts in this case, we believe that Cargill was

reasonably required by the regulation to disclaim his interest in the trust within a reasonable time after its creation.

Accordingly, we hold that Cargill's purported disclaimer of his one-half interest in the corpus of the trust was a gift to his three children that is taxable under section 2511(a).

*Decisions will be entered under Rule 50.*