ESTATE OF HELEN WODELL HALBACH, DECEASED, JOHN
POINIER, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 7099–76.    Filed November 9, 1978.

*Coleman Burke, Wallace B. Liverance, Jr., Kenneth M. Hart,*
and *Geoffrey J. O'Connor,* for the petitioner.
*Gerald J. O'Toole,* for the respondent.

STERRETT, *Judge:* Respondent, on April 30, 1976, determined a
deficiency in petitioner's estate tax in the amount of
$9,619,033.53.[1] Due to a severance of the issues raised by
petitioner, the sole question for our determination is whether the
disclaimer made by Helen Wodell Halbach of her remainder
interest in a trust corpus constituted a transfer of property
within the meaning of section 2035, I.R.C. 1954.

### FINDINGS OF FACT

This case was submitted under Rule 122, Tax Court Rules of
Practice and Procedure, hence all of the facts have been
stipulated and are so found.

Helen Wodell Halbach (hereinafter decedent), a resident of
Short Hills, N. J., died August 5, 1972. John Poinier (hereinafter
petitioner), a resident of Gladstone, N. J., whose principal place
of business was Summit, N. J., was appointed executor of
decedent's estate. Petitioner timely filed a Federal estate tax
return with the District Director, Internal Revenue Service,
Newark, N. J., and paid $320,066.89, the tax shown to be due on
the return.

Decedent's father, Parker Webster Page, died January 22,

---

[1]Respondent would allow additional credit for State death tax based upon the increase in value of
the estate if payment is substantiated.

1937, domiciled in Essex County, N. J. His will, dated January 12, 1935, was admitted to probate on February 10, 1937, by the Surrogate's Court of Essex County. Article Third thereof provided, in pertinent part, as follows:

If my wife, Nellie A. Page, survives me, I give, devise, bequeath and appoint all of said residue of my estate to my Trustees, hereinafter named, IN TRUST, to hold the same during the life of my wife, Nellie A. Page and to invest and reinvest the principal and to apply the net income to her use. Upon her death I give, devise, bequeath and appoint the principal in equal shares to my daughters Helen Page Wodell and Lois Page Cottrell and if either of my daughters should then be dead to such persons and in such proportions as such daughter may by will duly admitted to probate legally appoint and in default of such appointment to such daughter's issue then surviving in equal shares per stirpes.

By Article Tenth, Parker Webster Page appointed his wife, Nellie A. Page, and his daughters, as trustees. Nellie A. Page renounced her right so to act, and decedent and Lois Page Cottrell served as trustees until December 16, 1965, when Summit & Elizabeth Trust Co., of Summit, N. J., qualified as their cotrustee. The trustees had the power, in their absolute discretion, to invade corpus for the benefit of the life tenant in an amount not to exceed $10,000 in any one calendar year. The will contained no authorization for the use of principal during the term of the trust for the benefit of any other party.

Under date of October 11, 1945, the decedent executed a document under seal which read in pertinent part as follows:

I, the undersigned, HELEN PAGE WODELL, do hereby forever renounce, surrender and release any and all power or powers of appointment given to me under and by virtue of Article Third of the Last Will and Testament of Parker Webster Page, Deceased, dated January 12, 1935, except that I hereby reserve and retain the power to appoint any property subject to such power of appointment within a class which does not include any others than my descendants and their spouses, being a class within the provisions of Section 811(f)(2)(A) of the Internal Revenue Code, as amended, at the date hereof.

This release and renunciation is irrevocable.

Nellie A. Page died on April 14, 1970, whereupon the trust terminated and decedent and Lois P. Cottrell, who both survived Mrs. Page, were each then entitled to possession of one-half the remainder of the trust corpus. On April 19, 1970, decedent, being legally competent in all respects, executed a document entitled "Disclaimer and Renunciation" which provided as follows:

I, Helen Page Halbach (formerly Helen Page Wodell), residing at 49 Forest

Drive, Short Hills, New Jersey, do hereby irrevocably disclaim and renounce all my right, title and interest as a remainderman of the trust established by my father, Parker Webster Page, in Paragraph THIRD of his Last Will and Testament, dated January 12, 1935, and admitted to probate by the Essex County Surrogate's Court on February 10, 1937.

The fair market value of the assets comprising the remainder interest disclaimed by the decedent on April 19, 1970, was $10,954,717.60.

The Disclaimer and Renunciation was delivered to Summit & Elizabeth Trust Co., as cotrustee, on May 4, 1970, and was filed in the Surrogate's Court of Essex County, N. J., on June 15, 1970. In an action brought by the trustees for settlement of their account and for a determination of the validity and effect of the Disclaimer and Renunciation, the Superior Court of New Jersey held that the Disclaimer and Renunciation was timely executed and filed and was valid and effective under New Jersey law. *In re Estate of Page,* 113 N.J. Super. 582, 274 A.2d 614 (Ch. Div. 1970).

Under the above judgement, dated December 23, 1970, the Superior Court directed distribution of decedent's disclaimed remainder interest to the alternate takers, decedent's issue living at the time of death of Nellie A. Page. The trustees' accounting thereunder listed no distribution of corpus or income of the trust to any person at any time, other than periodic distribution of income to Nellie A. Page, the life income beneficiary. However, the trustees' accounting did show that on February 10, 1958, the trustees effected a loan of $6,000 to decedent, evidenced by a demand note in that sum without stated interest payment to the order of the trustees and signed by decedent. Said note was listed among the assets comprising the corpus on hand in the trust on April 14, 1970, the closing date of the account. Distribution of the assets, including the above note, was effected in kind in 1971 in accordance with the terms of the Superior Court judgment.

On decedent's Federal estate tax return petitioner disclosed decedent's Disclaimer and Renunciation but did not include the value of the disclaimed remainder interest as part of the gross estate subject to Federal estate tax. As of August 5, 1972, the fair market value of the trust assets constituting the remainder interest disclaimed by decedent was $13,954,034.28.

In his notice of deficiency, dated April 30, 1976, respondent

determined that decedent's disclaimer effected a transfer subject to Federal estate tax under section 2035. Accordingly, he increased decedent's taxable estate by the fair market value of the remainder interest at date of decedent's death.[2]

## OPINION

Section 2001[3] imposes a tax on the decedent's privilege of transferring his taxable estate. See *Chase Nat. Bank v. United States*, 278 U.S. 327, 334 (1927). The gross estate includes any interest in property that the decedent holds at the time of his death. Secs. 2031[4] and 2033.[5] Section 2035, as written on decedent's date of death,[6] further expanded the gross estate to include "the value of all property to the extent of any interest therein of which the decedent has at any time made a *transfer* * * * in contemplation of death." (Emphasis added.) Sec. 2035(a).[7] Due to the severance of issues by petitioner only the limited issue of whether decedent's disclaimer resulted in a transfer is before the Court at this time. If we do find that the disclaimer resulted in a transfer the petitioner has reserved for another day his right to argue that such transfer was not made in contemplation of death.[8]

When a decedent has, within a reasonable time, made an effective renunciation of a legacy under local law, such property will not be included in the gross estate. A decedent's renunciation merely exercises his right to disclaim his interest. *Brown v.*

---

[2]Respondent has also asserted that decedent's disclaimer constituted a gift subject to Federal gift tax and that petitioner, as executor of decedent's will, is liable for such tax. This asserted gift tax liability has not been assessed or paid, and an extension of the statute of limitations for assessment and collection of such tax has been executed. Consequently, on May 4, 1976, petitioner timely filed a claim for refund of the Federal estate tax paid, $320,066.89, with the Office of the District Director, Internal Revenue Service, Newark, N.J.

[3]SEC. 2001. A tax * * * is hereby imposed on the transfer of the taxable estate * * * of every decedent, citizen or resident of the United States. * * *

[4]SEC. 2031(a). GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

[5]SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

[6]Sec. 2035 was subsequently amended by TRA 1976.

[7]SEC. 2035(a). GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

[8]Petitioner's severance of the issue also reserves his right to question the proper valuation date with respect to such transfer.

*Routzahn,* 63 F.2d 914, 917 (6th Cir. 1933), cert. denied 290 U.S. 641 (1933). This exclusion is based on the property law theory that the property passes directly from the legator to the takers in default because it was never owned or controlled by the decedent.

Petitioner contends that, because the decedent's renunciation of her remainder interest was found to be both timely and effective by a New Jersey court (*In re Estate of Page, supra*), such interest should not be included in her gross estate. Respondent accepts petitioner's contention that the renunciation was effective under local law. However, he takes issue with the timeliness of that disclaimer. We do not question that the renunciation was both timely and effective for the purpose of preventing the vesting of legal title to the subject property in decedent. However, we find that the disclaimer was not timely for our purposes. See *Jewett v. Commissioner,* 70 T.C. 430, 436–437 (1978).

In *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), the Supreme Court considered the impact of a State court's interpretation of local law. It noted that the Commissioner of Internal Revenue was not a party to the State court's proceeding and questioned whether any party thereto was a bona fide adversary. The Supreme Court found that the State court's decision did not have the effect of res judicata and that collateral estoppel did not apply. It further found that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling." *Commissioner v. Estate of Bosch, supra* at 465. The Court then gave "proper regard" to the State court's ruling.

Herein, we have no authority or desire to quarrel with the State court's decision that the disclaimer was timely for probate purposes. The issue before that court was the validity and effect of the renunciation in relation to a determination of in which party legal title to the property would vest. That court had no need to take into account, as this Court must, the congressional desire to impose a tax on the transfer of a property interest. Therefore, what is a reasonable time for probate purposes, any time prior to the vesting of title in the party renouncing the interest, is not necessarily reasonable for our purpose, determin-

ing whether a transfer of the property interest has occurred. See *Fuller v. Commissioner*, 37 T.C. 147, 155 (1961).[9] The factors that we must consider are simply not the same as those a State court must have in mind.

Since 1937, the death of the settlor, the decedent had had an indefeasible right to an interest in property to be enjoyed personally if she survived the life tenant or to be enjoyed by whomever she named in her will if she predeceased the life tenant. In 1945, she partially released the general power, making it a special power whose class was limited to her descendents and their spouses. Such release followed the statutory change of the Revenue Act of 1942.[10] It was not until 1970, some 33 years after the creation of decedent's interest, that she renounced her remainder. When an indefeasible interest in property is created at the time of the settlor's death, it is more logical to conclude that the period within which the beneficiary may reasonably disclaim commenced on that date rather than some 33 years later when the life tenant died. Cf. *Jewett v. Commissioner, supra;* sec. 25.2511–1(c), Gift Tax Regs. On that latter date, decedent was in a position of merely standing aside (by filing a disclaimer) and letting the property go directly to the natural objects of her bounty. Her decision to refuse to accept what had been irrevocably destined for her for 33 years was made with the benefit of being able to make a judgment based on circumstances at that later date. The use of such hindsight was an obvious estate planning advantage, but under these facts not effective estate-tax wise.

Petitioner also contends that respondent's application of the reasonableness test of section 25.2511–1(c), Gift Tax Regs., is an abuse of the Commissioner's discretion. We think he confuses the retroactive application of a case interpreting that section with the retroactive application of the regulation itself. *Jewett v. Commissioner, supra,* is an interpretation of that regulation as applied to a 1972 disclaimer of an irrevocable interest created in 1939. Herein we are considering the effect of a 1970 disclaimer of an interest created in 1937. While we are not relying on this

---

[9]Petitioner's reliance on *Brown v. Routzahn*, 63 F.2d 914 (6th Cir. 1933), cert. denied 290 U.S. 641 (1933), is misplaced because, as footnoted in *Jewett v. Commissioner*, 70 T.C. 430, 436 (1978), that case, in interpreting a provision of the Revenue Act of 1921, did not have to consider sec. 25.2511–1(c), Gift Tax Regs.

[10]The timing of this release indicates a careful monitoring of the law by decedent's legal counselors.

gift tax regulation as dispositive of the estate tax question before us, we do not agree with petitioner that the regulation's interpretation of a section 2511 transfer should be disregarded in our determination of whether a section 2035 transfer existed. In any event, petitioner can hardly contend he lacked notice with respect to a regulation adopted in 1958, T.D. 6334, 1958–2 C.B. 628.

We find, therefore, that decedent's delayed renunciation was, in effect, a transfer within the meaning of that term as used in section 2035. Because we find that the disclaimer by decedent caused a transfer within the meaning of section 2035, we find it unnecessary to consider the effect of the loan by the trust to decedent.

*An appropriate order will be entered.*