## EDWARD MCGIVNEY vs. PETER McGIVNEY.

Suffolk.    March 24. — June 30, 1886.    W. ALLEN & HOLMES, JJ., absent.

A. sent from a distant State to B., the husband of his sister C., in this Common-
wealth, where A. formerly resided, a sum of money, which B. deposited in a
savings bank, subject to the order of A. upon him therefor.   C. bought a parcel
of real estate here, and obtained from B., and used in part payment for the
same, a portion of A.'s money which he had so entrusted to B.   C. then wrote a
letter to A., which informed him of such purchase, and contained the following
language: " I could not make the purchase until I prevailed after a hard strug-
gle with B. to let me have a little of your money, which he gave me on these
terms, that the deed should be made out in my name, that at my death all
should be yours; all B. wants is a living out of it whilst he lives, and if you
don't approve of this letter, all the favor I ask of you is to give me one or two
years, and I will pay you up your money with thanks, for so doing you will be
the means of making me a home whilst myself and husband lives, and after that
it is your property forever."   A. received this letter, but did not answer it.   C.
lived in possession of the estate for nearly eight years, when she died, leaving a
will, by which she devised the estate to B for life, and, after his decease, to D.,
another brother, in fee, upon the conditions that he should pay the expenses of
her last sickness and funeral, and should also pay to A. a certain sum larger in
amount than that part of his money used as above stated.   A. was, soon after-
wards, informed of the contents of the will.   B. went into possession of the
estate, and held it until his death, twenty years after that of C.   D., who had
lent C. sums of money, and had also paid the expenses of her last illness and
funeral, then took possession of the estate.   D. knew, at the time of the transac-
tion, that a part of A.'s money was used without his consent by C. in paying
for the estate.   A., upon hearing of B 's death, returned to this Commonwealth,
and brought a bill in equity against D. for the conveyance of the legal title to
the estate, having refused a tender by D. of the sum directed to be paid him in
C.'s will.   *Held*, that A., by his laches, had lost the right to assert any claim
to the estate which he might have had otherwise; and that he was entitled
only to the sum given him by the will of C., with interest from the time of
B.'s death.

BILL IN EQUITY, filed November 9, 1885, for the conveyance
of the legal title to a certain parcel of land in Boston.   Hearing
before *Gardner*, J., who reported for the consideration of the
full court the following case:

In March, 1852, the plaintiff, then living in Boston, left for
California, where he resided until October, 1885, when he re-
turned to Boston.   Mary O'Riley, a sister of the plaintiff and of
the defendant, and the wife of Thomas O'Riley, lived in Bos-
ton with her husband.   Prior to the year 1857, the plaintiff sent
to Thomas O'Riley $1200, which money Thomas deposited in

savings banks in Boston for safe keeping, subject to the order of the plaintiff upon Thomas therefor.

In September, 1857, Mary purchased a house in Billerica Street in Boston, described in the plaintiff's bill, subject to a mortgage of $2000. She paid in cash, at the delivery of the deed, $1000, of which sum she obtained $400 from her husband Thomas, and which he took from the moneys of the plaintiff, then held by him, Thomas, as above stated. On December 18, 1857, Mary, who could only write her name, engaged one Edward Tirrell to write a letter to the plaintiff, the material part of which was as follows:

" I bought a house on Billerica Street, No. 29. It is a first rate brick house $3\frac{1}{2}$ stories in height containing 16 rooms. . . . I bought it for $3000 and it is considered the cheapest house ever was sold in Boston; it has a good yard & shed and our passageway on our own land . . . . alone Brother Edwd I could not make the purchase until I prevailed after a hard struggle with my husband Thomas to let me have a little of your money which he gave me on these terms that the deed should be made out in my name (Mary OReilly) that at my death that all should be yours all Thos. wants is a living out of it whilst he lives & if you don't approve of this letter all the favor I ask of you is to give me 1 or 2 years and I will pay you up your money with thanks, for so doing you will be the means of making me a home in Boston whilst myself and husband lives and after that it is your property forever."

Her husband Thomas had full knowledge of the contents of this letter. The plaintiff made no answer to it, although he received it in California. The defendant advanced, as a loan to his sister Mary, $200 at the time of the purchase of the house, which sum was then used in part payment of the mortgage on said house. The defendant, at the time that the $400 of the plaintiff's money was obtained by Mary from her husband Thomas, and used by her, as above stated, in part payment for the house, had full knowledge of the transaction and of the fact that the $400 so used by Mary was the money of the plaintiff, and so used without his consent. The defendant paid $83, the full amount of the funeral expenses and those of the last sickness of his sister Mary. He also lent to his sister Mary $175 in April, 1859.

Mary O'Riley died on July 21, 1865, leaving a will, admitted to probate in December, 1865, by which she devised said real estate to her husband Thomas for life, and, after his decease, to the defendant in fee, upon the conditions that he should pay the expenses of her last illness and funeral, and should also pay the sum of $500 to the plaintiff. Thomas O'Riley died in July, 1885, having been in the possession of the house and real estate since the death of his wife. After the death of Thomas, the defendant took possession of the same, and is still in possession, having, before the filing of the plaintiff's bill, tendered $500 to the plaintiff, which he has refused to receive.

The defendant was in California when his sister Mary died, and within a year after returned to Boston, when he wrote to the plaintiff about the will, giving him a general account of the contents, and stating that the plaintiff was legatee to the amount of $500, to which the plaintiff made no response. The plaintiff, upon hearing of the death of Thomas O'Riley, returned to Boston, and brought this bill.

The plaintiff, when in California, received the following letter from Thomas O'Riley, to which the plaintiff made no answer:

" My dear Edward, — You may feel easy about your money, that is all right. Your money is all sure for you. . . . I know this much that she wished to keep the house in the family as long as she could. She knew that if she would make it over to you that you would sell it before six months and that Peter would not so she willed the house to Peter on conditions that he shall pay you over before he gets possession all your money and in case that you should die before that time your children gets it or their ears."

*J. A. Maxwell*, for the plaintiff.

*W. H. Harrington*, for the defendant.

GARDNER, J. The plaintiff contends that he has an equitable interest in the house and land in Billerica Street in Boston, which he can reach through this bill in equity, and apply in payment of his debt. If his money was used in the purchase of this estate without his knowledge or assent, he may have had an equitable lien thereon, and he may have been entitled to relief. *Bresnihan* v. *Sheehan*, 125 Mass. 11, and cases cited.

The case finds, however, that his sister, Mary O'Riley, purchased the house in September, 1857; and that in December of that year she wrote to the plaintiff, then in California, informing him that she had used part of his money in its purchase, "and at her death all should be his." In case the plaintiff did not approve of this, she asks him to let it remain for one or two years, and that then she will repay him. The plaintiff received this letter, and made no answer to it. It is fair to presume that the plaintiff was willing to let the sum of $400 remain in the house for the benefit of his sister, according to her request.

The plaintiff contends that the letter of Mary O'Riley to him contains a good declaration of trust, in the following language: After a hard struggle, Thomas let me have a little of your money, which he gave me on these terms, that the deed should be made out in my name, that at my death all should be yours. All Thomas wants is a living out of it while he lives, and if you don't approve of this letter, all the favor I ask of you is to give me one or two years and I will pay you up your money with thanks; for so doing you will be the means of making me a home in Boston whilst myself and husband live, and after that it is your property forever. This letter contains a statement of the misappropriation of the $400 of the plaintiff's money by Thomas O'Riley, and an offer on the part of Mary to repay it in one of two ways. The plaintiff made no election. He did not notify Mary of any intention to elect. He never answered the letter. Mary lived in possession of the estate until July 21, 1865, when she died testate. The plaintiff was soon after notified of the contents of her will, which provided that Thomas O'Riley was to have a life estate in the house; that, upon his death, the defendant should take the estate upon condition that he paid the expenses of the last sickness and funeral of Mary, and also paid $500 to the plaintiff.

The defendant contends that, if the plaintiff intended to rely upon an equitable interest in the house, or upon the alleged declaration of trust, he should, immediately upon the receipt of the information concerning the will and its provisions, have notified the defendant of his intention; that it was his duty then to have enforced his claim upon the estate. Mary died in

1865. Thomas died in 1885. During twenty years the plaintiff has been silent. In the mean time, the defendant knew of the original wrong taking of the $400, and that the plaintiff had been informed of it, and that he had full knowledge of the contents of the will, and of the further fact that the defendant had lent $200 to his sister Mary upon the purchase of the house. The defendant, through the silence of the plaintiff, was led to believe that he acquiesced in the disposition of the estate by the will of Mary. He was induced to believe that it was not necessary for him to press his claim as a creditor against the estate of Mary. He relied upon the will, and, according to its terms, soon after the death of Mary, paid the expenses of her last sickness and funeral. We think that the silence of the plaintiff, after he had knowledge of the provisions of the will of Mary O'Riley, is decisive. *Plymouth* v. *Russell Mills*, 7 Allen, 438, 444. By his own laches, the plaintiff has deprived himself of any right or benefit which he might have had, if he had exercised proper diligence. His silence in relation to the will, after he had been informed of its provisions regarding himself and the defendant, induced the defendant to believe that the plaintiff fully acquiesced in its provisions. It is now too late to set up any claim he may have had to the estate, if in season he had insisted upon it.

The plaintiff is entitled to $500, under the will of Mary O'Riley, with interest from the time of the death of Thomas O'Riley. Upon the payment of this sum by the defendant into the clerk's office, the bill will be dismissed.

*Decree accordingly.*