GEORGE F. JEWETT, JR., AND LUCILLE M. JEWETT,
PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 3877–76.     Filed June 13, 1978.

*Robert J. Richards, Jr.,* for the petitioners.
*Willard J. Frank* and *Charles W. Maurer, Jr.,* for the respondent.

## OPINION

RAUM, *Judge:* The Commissioner determined the following deficiencies in petitioners' Federal gift tax:

| Petitioner | Calendar quarter ending | Deficiency |
| --- | --- | --- |
| George F. Jewett, Jr. ......... | Sept. 30, 1972 | $398,065.39 |
| George F. Jewett, Jr. .......... | Dec. 31, 1972 | 23,288.48 |
| Lucille M. Jewett .............. | Sept. 30, 1972 | 310,613.94 |
| Lucille M. Jewett ............... | Dec. 31, 1972 | 19,363.06 |

The only issue presented is whether George F. Jewett, Jr., made taxable gifts when he executed disclaimers of portions of his remainder interest in a certain testamentary trust.

Petitioners George F. Jewett, Jr., and Lucille M. Jewett, husband and wife, resided in Ross, Calif., at the time their petition in this action was filed. Petitioner George F. Jewett, Jr., filed his United States gift tax returns for the calendar quarters ending September 30, 1972, and December 31, 1972, with the Internal Revenue Service Center in Fresno, Calif. Petitioner Lucille M. Jewett elected to consent to treat the gifts made by her husband during the taxable year 1972 as having been made by both husband and wife to the extent allowed by law and filed her United States gift tax returns for the calendar quarters ending September 30, 1972, and December 31, 1972, with the

Internal Revenue Service Center in Fresno, Calif. Since petitioner Lucille M. Jewett is a party to this action solely by virtue of her consent to treat part of her husband's gifts as her own, George F. Jewett, Jr., will hereinafter be referred to as the petitioner.

Margaret Weyerhaeuser Jewett, petitioner's grandmother, died on January 14, 1939, a resident of Falmouth, Mass. She left a will which was duly admitted to probate (Barnstable Probate No. 27161). Clause Eighth of said will created a trust (the trust) for the benefit of the testatrix's husband, James R. Jewett, during his lifetime and thereafter for the benefit of the testatrix's son, George F. Jewett, and George's wife, the testatrix's daughter-in-law, Mary Cooper Jewett (now Mary J. Gaiser), for their lives. The trust, having been established under the Will of Margaret Weyerhaeuser Jewett, a Massachusetts decedent, has a situs in Massachusetts. The trustee serving at the present time is John F. Cogan, Jr., of Lexington, Mass.

Mary Cooper Jewett (now Mary J. Gaiser), petitioner's mother, is the sole surviving life tenant of the trust, inasmuch as James R. Jewett and George F. Jewett are now deceased. She was born on March 7, 1901, and is still living. Petitioner, her son, was born on April 10, 1927, and is now living.

Under the terms of Clause Eighth of the Will of Margaret Weyerhaeuser Jewett, petitioner was entitled to a share of the trust remainder (the trust remainder) if he survived his mother. If he did not survive his mother, the share to which he would have been entitled if he had survived was to pass to his issue per stirpes.

On August 30, 1972, petitioner executed an instrument entitled "Estate of Margaret Weyerhaeuser Jewett/George F. Jewett, Jr. Disclaimer." Said instrument was recorded in the Barnstable Probate Court on September 5, 1972. The instrument stated, in part:

WHEREAS, MARGARET WEYERHAEUSER JEWETT, late of Falmouth, County of Barnstable, Commonwealth of Massachusetts, died on January 14, 1939, leaving a will which was proved and allowed by the Probate Court of said County on February 14, 1939, and

WHEREAS, CLAUSE EIGHTH of said will created a trust for the benefit of her husband, JAMES R. JEWETT, during his lifetime and thereafter for the benefit of her daughter-in-law, MARY C. JEWETT (now MARY C. GAISER), and her son, GEORGE F. JEWETT (now deceased), and

WHEREAS, discretionary payments of income are now being made to MARY

C. GAISER pursuant to the provisions of Subparagraph 3 of Paragraph B of said CLAUSE EIGHTH by the Trustees of the aforesaid, and

WHEREAS, the undersigned, as a son of MARY C. GAISER and the late GEORGE F. JEWETT, has an interest in fifty percent (50%) of the trust estate, including accumulations of income transferred to principal under the provisions of Paragraph B of CLAUSE NINTH provided that he survives said MARY C. GAISER, and

WHEREAS, the undersigned wishes to renounce his right to receive ninety-five percent (95%) of the aforesaid fifty percent (50%) of the remainder of the trust estate upon the death of MARY C. GAISER (but not including the right to receive fifty percent (50%) of the accumulations of income, if any there be, occurring after the execution of this disclaimer).

NOW, THEREFORE, the undersigned, said GEORGE F. JEWETT, JR., hereby irrevocably renounces and disclaims his right, if any, to ninety-five percent (95%) of the aforesaid fifty percent (50%) of the trust estate upon termination, provided, however, that this disclaimer shall not act upon any interest he may have in any accumulations of income which may occur after the date set forth below.

Petitioner had no interest in that portion of the trust remainder described in the instrument, from and after August 30, 1972.

On December 14, 1972, petitioner executed an instrument, in the same form as that executed August 30, 1972, by which he disclaimed his remaining 5-percent interest in one-half of the trust remainder. This second instrument was recorded in the Barnstable Probate Court on December 21, 1972. The parties have stipulated that petitioner had no interest in the trust remainder from and after December 14, 1972.

The value of the entire trust corpus on August 30, 1972, was $7,912,393.63, and on December 14, 1972, was $8,398,038.37.

On their United States gift tax returns for the calendar quarters ending September 30, 1972, and December 31, 1972, petitioners notified the Commissioner of the execution of the two disclaimers, but did not report as gifts any amount in respect of the trust remainder. The Commissioner determined that petitioner's execution of disclaimers of 95 and 5 percent, respectively, of his 50-percent interest in the trust remainder constituted taxable gifts of those interests in the trust remainder, and determined deficiencies accordingly.

Section 2501, I.R.C. 1954, imposes a tax upon the transfer of property by gift, and the only question presented by this case is whether petitioner's execution of disclaimers of portions of his interest in the trust remainder constituted transfers of property by gift subject to the gift tax. See sec. 2511. The answer to this

question is to be found in the proper interpretation of section 25.2511–1(c), Gift Tax Regs., which provides in pertinent part as follows:

Sec. 25.2511–1 Transfers in general.

(c) The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. * * * Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), *a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer.* The refusal must be unequivocable [sic] and effective under the local law. There can be no refusal of ownership of property after its acceptance. Where the local law does not permit such a refusal, any disposition by the beneficiary, heir, or next-of-kin whereby ownership is transferred gratuitously to another constitutes the making of a gift by the beneficiary, heir, or next-of-kin. In any case where a refusal is purported to relate to only a part of the property, the determination of whether or not there has been a complete and unqualified refusal to accept ownership will depend on all of the facts and circumstances in each particular case, taking into account the recognition and effectiveness of such a purported refusal under the local law. In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property. * * * [Emphasis supplied.]

The regulation sets up two criteria by which to judge whether a disclaimer shall be treated as a taxable transfer of property by gift rather than a mere refusal to accept ownership of a tendered gift or bequest: first, the disclaimer must be unequivocal and effective under local law, in this case the law of Massachusetts; and second, the disclaimer must be executed within a reasonable time after knowledge of the existence of the transfer. *Fuller v. Commissioner,* 37 T.C. 147, 155; *Keinath v. Commissioner,* 58 T.C. 352, 358–359, reversed on another ground 480 F.2d 57 (8th Cir.); *Estate of Hoenig v. Commissioner,* 66 T.C. 471, 477. The Commissioner does not dispute petitioner's claim that the two disclaimers executed by petitioner were unequivocal and effective under Massachusetts law. Therefore, the only issue is whether petitioner's disclaimers were executed within a reasonable time of his learning of the existence of the transfer to him. This is an issue of Federal law not controlled by State

law concepts of "reasonable time." *Fuller v. Commissioner*, 37 T.C. at 155; *Estate of Hoenig v. Commissioner*, 66 T.C. at 477.

Petitioner executed the two disclaimers in 1972, approximately 33 years after the death of his grandmother and the establishment of the trust, and 24 years after he himself reached the age of 21. The Commissioner argues that the "reasonable time" in which petitioner could disclaim his interest in the trust remainder without incurring gift tax liability should be measured from the time he reached the age of majority (1948) since that date is later than the date of the creation of his interest in the trust remainder, namely, the date of Margaret Weyerhaeuser Jewett's death (1939).[1] Petitioner does not dispute that the interval, so measured, was not "reasonable." Petitioner argues, however, that the "reasonable time" does not begin to run until petitioner's interest becomes indefeasibly vested upon the death of the last surviving life tenant, and relies on the fact that he disclaimed prior to the death of his mother, the surviving life tenant. The narrow issue presented then is whether, under Federal law, petitioner had a "reasonable time" *from the death of the last surviving life tenant* in which he could disclaim his interest in the trust remainder without thereby making a taxable gift.

In *Keinath v. Commissioner*, 58 T.C. 352, reversed 480 F.2d 57 (8th Cir.), the petitioner was the remainderman of a trust set up by the will of his late father. His interest was vested, subject to divestiture only if he should predecease the life beneficiary. Less than 2 months after the death of the life beneficiary, he executed a disclaimer of his interest which was timely and effective under local (Minnesota) law. We held that disclaimer a taxable gift under sections 2511 and 2501, noting (58 T.C. at 359–360):

For nearly 19 years Cargill knew that if he survived his mother he would receive at least one-half of the corpus of the trust. He also knew, because he was a trustee of the trust, that receipt of the trust assets would be beneficial rather than onerous. Petitioners brought out no factor at trial which prevented Cargill from making a disclaimer of the remainder within a reasonable time after the creation of the trust. We can only assume that his reason for waiting to disclaim until his mother's death was his inability to determine whether he

---

[1]We assume that petitioner knew about his remainder interest in the trust at least by the time he reached his majority. In any event, petitioners, upon whom the burden rested, did not establish otherwise.

would prefer receiving the assets himself or permit his children to get them at the termination of the trust.

As we have noted previously, section 2511 was intended to reach broadly to gifts of every type. The exception from taxation for disclaimers was designed to permit a donee to avoid receiving an unwanted gift or bequest within a reasonable time after learning of the gift or bequest; it should not be used as an estate-planning and tax-avoidance tool. On the facts in this case, we believe that Cargill was reasonably required by the regulation to disclaim his interest in the trust within a reasonable time after its creation.

We think that our decision in *Keinath* was correct and that it controls the decision in this case. Petitioner was a remainderman of the trust whose interest would be defeated only if he failed to outlive his mother, the last surviving life tenant of the trust.[2] His remainder interest was created when his grandmother died and the trust was established pursuant to her will. See *Smith v. Shaughnessy*, 318 U.S. 176, 180–181; *Robinette v. Helvering*, 318 U.S. 184, 187; *Helvering v. Campbell*, 313 U.S. 15, 22. From the time of its creation, that remainder interest was a valuable property interest, even though it was subject to contingencies and had not, as yet, become possessory;[3] had he assigned his interest without consideration, the transfer would have been subject to the gift tax. *Commissioner v. Procter*, 142 F.2d 824, 826–827 (4th Cir.), certiorari denied 323 U.S. 756. At least as early as 1948, when he reached the age of majority, petitioner could have disclaimed his remainder interest if he did not desire to accept its benefits, but he waited some 24 years before taking that step. During those 24 years he had the opportunity to assess whether disclaimer would be "the most advantageous course to be pursued," *Estate of Hoenig v. Commissioner*, 66 T. C. at 477, and whether "he would prefer receiving the assets himself or permit his children to get them at the termination of the trust." *Keinath v. Commissioner*, 58 T.C. at 359. For 24 years, in sum, he

---

[2] We do not regard it as important whether petitioner's interest would be considered, under Massachusetts law, a contingent remainder or a vested remainder subject to divestiture, because the economic reality is the same. See *Helvering v. Hallock*, 309 U.S. 106, overruling *Helvering v. St. Louis Union Trust Co.*, 296 U.S. 39, and *Becker v. St. Louis Union Trust Co.*, 296 U.S. 48, where the formal difference between a contingent remainder and a vested remainder subject to divestment had been held to be crucial.

[3] The value of petitioner's remainder interest was not, of course, equal to 50 percent of the value of the trust corpus. Rather, it depended upon actuarial factors reflecting the various contingencies. There was originally a dispute between the parties as to the actuarial factors to be used, but the respondent has conceded that the petitioner's position in this regard is correct. Accordingly, there is no longer any controversy between the parties as to the computation of the value of the remainder interest.

possessed the power to decide the ultimate disposition of his share of the corpus of the trust, a power which he relinquished when he executed the two disclaimers. But it is precisely upon the relinquishment of the power to control the dispostion of property that the gift tax is laid. *Burnet v. Guggenheim*, 288 U.S. 280, 287; *Sanford's Estate v. Commissioner*, 308 U.S. 39, 43; *Smith v. Shaughnessy*, 318 U.S. at 181; *Robinette v. Helvering*, 318 U.S. at 186–187. We hold, therefore, that the two disclaimers constituted taxable transfers of petitioner's remainder interest in the trust.

Petitioner relies primarily upon the decision of the Court of Appeals for the Eighth Circuit in *Keinath v. Commissioner*, 480 F.2d 57, reversing our decision in *Keinath v. Commissioner*, *supra*.[4] The Eighth Circuit agreed with our holding that the definition of "reasonable time" is a matter of Federal law, but went on to say (480 F.2d at 61–62):

> In determining "reasonable time" and the related issue of when the reasonable time period commences, we perforce, absent a federal statute or regulation defining reasonable time, must look to the law of the states. We are not conclusively bound by the state law, but this is the only field to probe for legal decisions and discussions on the phrase "reasonable time" as used in the context of making valid disclaimers. [Fn. ref. omitted.]

The Court then relied heavily upon Minnesota law in determining that the "reasonable time" should be measured from the date of death of the last surviving life tenant. But we do not agree that State law necessarily provides an adequate guide to the resolution of the Federal question presented by this case. The Federal gift tax is concerned with control over the disposition of property and with exercises of the right to determine who should enjoy the fruits of ownership of property. H. Rept. 708, 72d Cong., 1st Sess., 1939–1 C.B. (Part 2) 457, 476–477; S. Rept. 665, 72d Cong., 1st Sess., 1939–1 C.B. (Part 2) 496, 524–525; *Smith v. Shaughnessy*, 318 U.S. at 180. State law, by contrast, may respond to concerns such as the balancing of conflicting claims to property, see, e.g., *McGivney v. McGivney*, 142 Mass. 156, 7 N.E. 721; *Garfield v. White*, 326 Mass. 20, 92 N.E. 2d 575, 579; *Town of Pepperell v. Whipple*, 327 Mass. 688, 100 N.E. 2d 844, 847, and the protection of the rights of creditors

---

[4]Petitioner also relies upon *Brown v. Routzahn*, 63 F.2d 914 (6th Cir.), certiorari denied 290 U.S. 641. That case interpreted provisions of the Revenue Act of 1921, and did not purport to consider the effect of the regulations which control the disposition of this case.

and other third parties, see, e.g., *Oliver v. Wells*, 254 N.Y. 451, 173 N.E. 676, 679, and *In Re Wilson's Estate*, 298 N.Y. 398, 83 N.E. 2d 852, 854–855; cf. *Estate of Dreyer v. Commissioner*, 68 T.C. 275, 292–294. While a State court might be willing to accept a renunciation of a nonpossessory and not indefeasibly vested property interest after the passage of considerable time, so long as the interests of third parties have not been harmed, the passage of time is crucial to the scheme of the gift tax. With time, the potential recipient can wait to see if he himself needs the property, or whether he had better let it pass directly to the next generation.

The petitioner further argues, however, that this Court has acquiesced in the reversal of *Keinath*. In *Estate of Rolin v. Commissioner*, 68 T.C. 919, 927, on appeal (2d Cir.), it was stated:

> Moreover, under New York law, the reasonable time for renunciation would not begin to run until the interest is indefeasibly fixed both in quality and quantity. The same rule has been recognized for Federal tax purposes. *Keinath v. Commissioner*, 480 F.2d 57 (8th Cir. 1973). Such a rule should be applied here. [Citation omitted.]

In *Rolin*, however, a case that was not reviewed by the full Court, the question was whether the "reasonable time" for renunciation began to run upon the creation of a revocable inter vivos trust or at the death of the trust donor. It was held that the revocability of the trust meant that the donee's interest was not fixed until the power of revocation lapsed upon the death of the donor. Here, however, petitioner's interest became fixed, in the sense in which that word was used in *Rolin*, upon the death of Margaret Weyerhaeuser Jewett. At that point, the testatrix's power of revocation ceased and petitioner's interest under her will was no longer subject to her unfettered discretion. See *Sanford's Estate v. Commissioner*, 308 U.S. at 43–44. Moreover, petitioner's interest was, at the death of Margaret Weyerhaeuser Jewett, "fixed both in quality and quantity" as required by *Rolin*. His interest was a remainder interest (quality) in 50 percent of the corpus of a trust (quantity), which interest would become indefeasibly vested, and possessory, only if he survived the last surviving life tenant. We regard it as irrelevant under *Rolin* that, as with any remainder interest, the present dollar value of petitioner's interest, being dependent upon actuarial factors, would fluctuate over time.

The petitioner attempts, finally, to distinguish this case from *Keinath*, but we find the proposed distinctions unconvincing. In *Keinath*, it is argued, the remainder interest was vested in the beneficiary seeking to disclaim it, while this petitioner held only a contingent remainder interest. Accepting the latter allegation as true, however (see n. 2 *supra*), we do not regard it as controlling. The substance of the property transaction, not its form under archaic principles of property law, must control. *Helvering v. Hallock*, 309 U.S. 106, 116–118. Furthermore, it is argued, the disclaimer in *Keinath* was not complete and unequivocal because the disclaiming beneficiary acted "with the understanding" that the disclaimed property would pass in a certain manner. Brief for the petitioner at page 14. It is true that the petitioner in *Keinath* sought a ruling from the Minnesota courts as to the disposition of the disclaimed remainder interest under State law. *Keinath v. Commissioner*, 58 T.C. at 355. But he nonetheless made a valid and unequivocal disclaimer of his remainder interest, and the Minnesota court so held. *Keinath v. Commissioner*, 58 T.C. at 356. And in any event, we think it irrelevant that petitioner herein, unlike the petitioner in *Keinath*, was willing to act upon his own understanding of the law which would apply to the disposition of his remainder interest following his disclaimer.

The petitioner possessed, for 24 years, the effective right to determine who should ultimately receive the benefits of a 50-percent remainder interest of a trust which, in 1972, had a corpus of approximately $8 million. He waited to act in respect of that remainder interest until the surviving life beneficiary was over 70 years of age and until he himself was 45 and, it appears, a man of substantial means.[5] In 1972, by the execution of two disclaimers, he elected to let the property pass according to the alternative provisions of his grandmother's will—to the natural objects of his bounty. This, we hold, was an exercise of control over the disposition of property subject to the gift tax imposed by section 2501.

Finally, we note that section 2009(b) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1893, added a new section 2518 to the gift tax provisions of the Code. The new provisions, which were made prospective only (see sec. 2009(e)(2) of the 1976 Act),

---

[5] Petitioner's gift tax returns disclose that he made taxable gifts of $2,751,502 between 1958 and 1972, not including the interests in the trust here at issue.

lay out specific standards for determining when a disclaimer constitutes a taxable gift, and would support the Commissioner's position here if the disclaimers here were subject to its provisions. Moreover, the legislative history strongly indicates that Congress disapproved of the result reached by the Eighth Circuit in *Keinath* insofar as it permitted a tax-free disclaimer to be made 19 years after the creation of a remainder interest in a testamentary trust. See H. Rept. 94–1380, 94th Cong., 2d Sess. 66, 1976–3 C.B. (Vol. 3) 800. We think that section 2518 was intended to make sure that no such result would thereafter be reached and that it was certainly not intended to approve a contrary interpretation of the statute as it existed prior to the amendment. Cf. *Knetsch v. United States*, 364 U.S. 361, 367–369.

To reflect the Commissioner's concession in respect of valuation of the remainder interest,

*Decision will be entered under Rule 155.*

Reviewed by the Court.