ADELAIDE C. GRISWOLD, ET AL.,[1] PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 12876–79, 12878–79, 12880–79.     Filed August 23, 1983.

*Robert A. Bergquist* and *Charles C. Parlin, Jr.,* for the petitioners.
*Louis J. Zeller, Jr.,* for the respondent.

[1] Cases of the following petitioners are consolidated herewith: James R. Houghton and May K. Houghton, docket No. 12878–79; and Amory Houghton, Jr., and Ruth W. Houghton, docket No. 12880–79.

WILES, *Judge*: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal gift tax:

| Petitioner | Calendar quarter ending | Deficiency |
|---|---|---|
| Adelaide C. Griswold .............. June 30, 1974 (docket No. 12876–79) | | $271,421.72 |
| James R. Houghton .............:.. June 30, 1974 (docket No. 12878–79) | | 262,477.24 |
| May K. Houghton ................ June 30, 1974 (docket No. 12878–79) | | 262,477.24 |
| Amory Houghton, Jr ............ June 30, 1974 (docket No. 12880–79) | | 257,895.36 |
| Ruth W. Houghton ............... June 30, 1974 (docket No. 12880–79) | | 257,895.36 |

The only issue presently before us is whether Adelaide C. Griswold, Amory Houghton, Jr., and James R. Houghton made taxable gifts when they executed disclaimers of their respective interests in a testamentary trust.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner Adelaide C. Griswold (hereinafter Adelaide) resided in Buffalo, N.Y., when she filed her petition in this case. She timely filed her Federal gift tax return for the calendar quarter ended June 30, 1974, with the Internal Revenue Service Center, Andover, Mass.

Petitioners James R. Houghton (hereinafter James) and May K. Houghton, husband and wife, and petitioners Amory Houghton, Jr. (hereinafter Amory, Jr.), and Ruth W. Houghton, husband and wife, resided in Corning, N.Y., when they filed their petitions in this case. Petitioners James R. Houghton and Amory Houghton, Jr., timely filed their Federal gift tax returns for the calendar quarter ended June 30, 1974, with the Internal Revenue Service Center, Andover, Mass. Their respective wives, May K. Houghton and Ruth W. Houghton, elected to consent to treat the gifts made by their husbands during the taxable year 1974 as having been made by both husband and wife to the extent allowed by law, and they each (May K. Houghton and Ruth W. Houghton) filed their Federal

gift tax returns for the calendar quarter ending June 30, 1974, with the Internal Revenue Service Center, Andover, Mass.

Alanson B. Houghton was born on October 10, 1863, and he was the grandfather of Adelaide, Amory, Jr., and James. Alanson B. Houghton had three daughters, Eleanor Wickham, Matilda, and Elisabeth, and two sons, Amory and Quincy Wellington. Adelaide was born on November 19, 1923, and she is the daughter of Eleanor Wickham Houghton. Amory, Jr., and James were born on August 7, 1926, and April 6, 1936, respectively, and they are two of Amory Houghton's five children.

Alanson B. Houghton (hereinafter sometimes referred to as decedent) died testate on September 16, 1941, a resident of Steuben County, N.Y. His last will and testament (hereinafter referred to as the will), dated October 4, 1939, was admitted to probate there on August 27, 1942. Decedent's will established 10 trusts, one of which was for the primary benefit of his daughter Elisabeth (hereinafter such trust will be referred to as Elisabeth's Trust), and the others were for the primary benefit of each of his grandchildren who survived him. Decedent's son, Amory Houghton, and nephew, Arthur A. Houghton, Jr., were named as trustees for each of the trusts created by his will.

Decedent was survived by four of his children, including Amory, Eleanor Wickham, and Elisabeth, and nine grandchildren, including Adelaide, Amory, Jr., and James. Adelaide, Amory, Jr., and James were 17, 15, and 5 years of age, respectively, on the date of decedent's death.[2]

Elisabeth was 32 years of age at the date of decedent's death. Under the terms of Elisabeth's Trust, which is governed by the laws of the State of New York, the income was payable to Elisabeth during her life and, upon her death, the income was payable to her issue then living, per stirpes, or if none, to decedent's (Alanson B. Houghton's) then-living grandchildren (other than Sidney Cole) and to the then-living issue of any

---

[2]During 1941 or 1942, Adelaide learned that decedent's will created a trust for her primary benefit; between 1946 and 1950, Amory, Jr., learned that decedent's will created a trust for his primary benefit; and between 1954 and 1957, James learned that decedent's will created a trust for his primary benefit. At the same time that Adelaide, Amory, Jr., and James learned such information, they learned that decedent's will also created similar trusts for the primary benefit of their siblings and cousins.

deceased grandchild (other than Sidney Cole), one equal part thereof to each such grandchild and one equal part thereof to the issue of each such deceased grandchild to be apportioned among such issue in equal shares per stirpes. The trust further provided that it would terminate upon the death of the youngest of decedent's issue who was living both at the time of decedent's death and Elisabeth's death (i.e., the "measuring life"), with the corpus to be distributed to Elisabeth's then-living issue, or, if none, to decedent's then-living grandchildren (other than Sidney Cole) and to the then-living issue of any deceased grandchild (other than Sidney Cole), one equal part thereof to each such grandchild and one equal part thereof to the issue of each such deceased grandchild, the part so allotted to the issue of any deceased grandchild to be apportioned among such issue in equal shares per stirpes.

Sometime prior to 1957, various members of the Houghton family formed a corporation known as Houghton Estates for the purpose of supervising the operation of the several trusts which were established for their benefit. Amory Houghton and Arthur A. Houghton, the trustees of Elisabeth's Trust, were associated with Houghton Estates as "trustees."[3]

During March 1957, the trustees of Elisabeth's Trust and the other nine testamentary trusts created by decedent's will petitioned the Surrogate's Court of Steuben County, New York (hereinafter referred to as the Surrogate's Court), for a judicial settlement of their first intermediate accounting, covering the period from October 1, 1945, through December 31, 1954. In their petition with respect to Elisabeth's Trust, the trustees described Adelaide's, Amory, Jr.'s, and James's respective interests in such trust as follows:

---

[3]The record reveals that the so-called "trustees" of Houghton Estates assumed the principal responsibility for the financial matters of the Houghton family's various trusts, which numbered close to 100. The record further indicates that a significant portion of the trusts' assets consisted of stock in the Corning Glass Works, now a publicly held corporation, but in earlier years a privately held corporation apparently controlled by Alanson B. Houghton and various members of his family.

| Name | Nature of Interest |
|------|-------------------|
| Adelaide | (1) granddaughter of Alanson B. Houghton, * * * and (3) contingent income beneficiary and contingent remainderman of (a) trust under Article Nineteenth, Paragraph I [i.e., Elisabeth's Trust] * * * |
| Amory, Jr. | (1) grandson of Alanson. B. Houghton, * * * and (3) contingent income beneficiary and contingent remainderman of (a) trust under Article Nineteenth, Paragraph I [i.e., Elisabeth's Trust] * * * |
| James | (1) grandson of Alanson B. Houghton, * * * and (3) contingent income beneficiary and contingent remainderman of (a) trust under Article Nineteenth, Paragraph I [i.e., Elisabeth's Trust] * * * |

On April 4, 1957, the Surrogate of Steuben County (hereinafter referred to as the Surrogate) issued a citation (hereinafter referred to as Elisabeth's citation) to all persons who had an interest in Elisabeth's Trust. On the same date, the Surrogate also issued nine other citations with respect to each of the other nine testamentary trusts created under decedent's will. Elisabeth's citation clearly listed the names of each family member having an interest in her trust, including the names of Adelaide, Amory, Jr., and James, and provided, in pertinent part, as follows:

and to all persons interested in the trust for the benefit of Elisabeth Houghton under the Last Will and Testament of Alanson B. Houghton, late of the City of Corning, Steuben County, New York, deceased, SEND GREETING:

Upon the petition of Amory Houghton and Arthur A. Houghton, Jr. duly verified by said Amory Houghton on February 9, 1957 and by said Arthur A. Houghton, Jr. on March 1, 1957,

You and each of you are hereby cited to show cause before the Surrogate's Court of the County of Steuben in the Surrogate's Office in the Village of Bath, New York on the 21 day of October, 1957 at 10:00 o'clock in the forenoon of that date why said Surrogate's Court should not (1) finally and judicially settle and allow as filed the first intermediate account dated December 31, 1954 of petitioners as trustees of a trust for the benefit of Elisabeth Houghton under Article Nineteenth, Paragraph I of the Last Will and Testament of Alanson B. Houghton, deceased, covering both principal and income from October 1, 1945, the date of first receipt of assets by petitioners as such trustees to and including December 31, 1954 * * *

On June 15, 1957, Harold V. Ritter (hereinafter Mr. Ritter) an attorney retained by the trustees of Elisabeth's Trust and the other 9 testamentary trusts created under the will, personally served Elisabeth's citation and the other 9 citations upon Adelaide, who was 33 years of age at such time. On the same date, Mr. Ritter also served those citations upon Cole Heyniger and Susan Heyniger, Adelaide's minor children, by handing copies of the 10 citations for each child to Adelaide.

On August 26, 1957, Bela C. Tifft (hereinafter Mr. Tifft) an attorney retained by the trustees of Elisabeth's Trust and the other 9 testamentary trusts created under Alanson B. Houghton's will, personally served Elisabeth's citation and the other 9 citations upon Amory, Jr., who was 31 years of age at such time. On the same date, Mr. Tifft also served those citations upon Amory Houghton III and Robert West Houghton, the minor children of Amory, Jr., by handing copies of the 10 citations for each child to Amory, Jr.

On April 4, 1957, Mr. Tifft served a copy of Elisabeth's citation and the other 9 citations upon James by handing a copy to his mother, Laura R. Houghton. On April 7, 1957, James became 21 years of age. On September 7, 1957, Edward B. Hoffman, an attorney retained by the trustees of Elisabeth's Trust and the other 9 testamentary trusts created under the will, personally served Elisabeth's citation and the other 9 citations upon James.

Elisabeth died without issue on March 2, 1974. The youngest of decedent's issue who was living at the time of Elisabeth's death and decedent's death was Laura Beer.[4] Thus, according to the terms of Elisabeth's Trust, Laura Beer's lifetime serves as the measuring life of such trust.

Elisabeth was survived by eight of decedent's grandchildren (other than Sidney Cole), including Adelaide, Amory, Jr., and James. Thus, Adelaide, Amory, Jr., and James, upon Elisabeth's death, each became entitled to receive one-eighth of the income of Elisabeth's Trust during their respective lives; and if any of them survive Laura Beer (i.e., the measuring life), he or

---

[4] Laura Beer is the married name of Amory Houghton's daughter and decedent's granddaughter. She was born on Feb. 13, 1938.

she would receive not less than one-eighth of the corpus of such trust.[5]

Adelaide, Amory, Jr., and James each executed disclaimers with respect to their entire interests (i.e., income and corpus) in Elisabeth's Trust on May 15, 1974, June 6, 1974, and June 7, 1974, respectively. The disclaimers were unequivocal, valid under New York law, and stated that they were effective as of March 2, 1974. Adelaide's disclaimer was delivered to the trustees of Elisabeth's Trust on May 24, 1974; Amory, Jr.'s and James's disclaimers were delivered to the trustees of such trust on June 13, 1974. At the time that they made their disclaimers, Adelaide and James each had two children, and Amory, Jr., had four children. As a consequence of their disclaimers, each of their children received, per stirpes, the interest that their respective parents had in Elisabeth's Trust.[6]

On petitioners' U.S. gift tax returns for the calendar quarter ending June 30, 1974, petitioners notified respondent of the disclaimers executed by them or by their respective spouses, but reported that no taxable gifts were made during that quarter. In the notices of deficiency, respondent determined that Adelaide's, Amory, Jr.'s, and James's disclaimers of their respective interests in Elisabeth's Trust constituted taxable gifts of those interests, and determined deficiencies accordingly.[7]

---

[5]If Adelaide, Amory, Jr., or James did not survive Laura Beer, his or her share of the corpus of Elisabeth's Trust would pass, according to the terms of such trust, to his or her issue per stirpes.

[6]Under the provisions of Elisabeth's Trust, Adelaide, Amory, Jr., and James each became entitled to a portion of the trust's income during the period between Elisabeth's death and the delivery of their disclaimers to the trustees. No income, however, was distributed to them during such period; instead, the income was accumulated on the books of the trust and an income distribution was made to the beneficiaries of the trust on Aug. 19, 1974.

[7]In the notice of deficiency issued to Adelaide, respondent determined that her interest in Elisabeth's Trust had a value, as of the date of the disclaimer, of $1,098,809.31. In the notices of deficiency, separately issued to James and his wife, May K. Houghton, respondent determined that James's interest in Elisabeth's Trust had a value, as of the date of the disclaimer, of $1,179,341.89. In the notices of deficiency, separately issued to Amory, Jr., and his wife, Ruth W. Houghton, respondent determined that Amory, Jr.'s interest in Elisabeth's Trust had a value as of the date of the disclaimer of $1,088,438.84. The parties have stipulated and moved the Court that in the event an adverse decision is issued with respect to any of the petitioners, such petitioner and the respondent each reserves the right to introduce evidence at a later time as to the value of such petitioner's gift. We granted this joint motion.

OPINION

We must determine whether Adelaide's, Amory, Jr.'s, and James's disclaimers of their respective interests in Elisabeth's Trust, whereby such interests passed to their children, constituted transfers of property by gift subject to the gift tax. See secs. 2501 and 2511.

Adelaide, Amory, Jr., and James were contingent beneficiaries of Elisabeth's Trust when it was established upon the death of Alanson B. Houghton on September 16, 1941.[8] At that time, the vesting of both their income and principal interests depended upon, inter alia, Elisabeth's dying without issue. On March 2, 1974, Elisabeth died without issue and she was survived by, among others, Adelaide, Amory, Jr., and James. By surviving Elisabeth, Adelaide, Amory, Jr., and James each became entitled to a one-eighth interest in the net income from Elisabeth's Trust and, if any of them survive Laura Beer, the measuring life of the trust, then he or she will receive not less than a one-eighth interest in the trust corpus.[9] Shortly after Elisabeth's death, Adelaide, Amory, Jr., and James each executed disclaimers of their respective interests in Elisabeth's Trust. Their disclaimers were unequivocal, valid under New York law, and expressly provided that they were effective as of March 2, 1974. Consequently, Adelaide, Amory, Jr., and James have never received any income or principal from Elisabeth's Trust and their respective interests therein passed to their successors in interest, their children.

With respect to a transfer of a property interest by trust or otherwise to a beneficiary, the beneficiary's refusal to accept ownership of his property interest may constitute an indirect gift to his successor in interest subject to the gift tax. Section

---

[8]We have assumed that Adelaide's, Amory, Jr.'s, and James's interests in Elisabeth's Trust are properly characterized as contingent interests. Petitioners have characterized such interests as contingent and respondent has stated that he does not object to that characterization. While their interests may arguably be characterized as vested subject to divestiture, such a distinction is not one of substance for our purposes herein. See *Jewett v. Commissioner*, 455 U.S. 305, 308–309 n. 5 (1982); *Helvering v. Hallock*, 309 U.S. 106, 117–118 (1940).

[9]In the event that Adelaide, Amory, Jr., or James did not survive Elisabeth but had children living at the time of her death, then such children would take the income share of their deceased parent per stirpes. In the event that Adelaide, Amory, Jr., or James survived Elisabeth but not Laura Beer, and had children living at the time of Laura Beer's death, then such children would take the corpus share of their deceased parent per stirpes.

25.2511–1(c), Gift Tax Regs., provides, in pertinent part, as follows:

The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. * * * Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), *a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer.* The refusal must be unequivocable [sic] and effective under the local law. There can be no refusal of ownership of property after its acceptance. Where the local law does not permit such a refusal, any disposition by the beneficiary, heir, or next-of-kin whereby ownership is transferred gratuitously to another constitutes the making of a gift by the beneficiary, heir, or next-of-kin. In any case where a refusal is purported to relate to only a part of the property, the determination of whether or not there has been a complete and unqualified refusal to accept ownership will depend on all of the facts and circumstances in each particular case, taking into account the recognition and effectiveness of such a purported refusal under the local law. In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property. * * * [Emphasis supplied.]

Thus, section 25.2511–1(c), Gift Tax Regs., provides that a beneficiary's refusal to accept an interest transferred to him in trust will not be subject to the gift tax provided that the beneficiary's disclaimer is unequivocal, effective under local law, and made "within a reasonable time after knowledge of the existence of the transfer."[10] Moreover, the issue of what

---

[10]With respect to transfers, which create an interest in the person disclaiming, made after Dec. 31, 1976, see sec. 2518, added to the Code by sec. 2009(b), Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1893, which provides in part:

(a) GENERAL RULE.—For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.

(b) QUALIFIED DISCLAIMER DEFINED.—For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if—

(1) such refusal is in writing,

(2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of—

constitutes a "reasonable time" period within which to disclaim is one of Federal law not controlled by State law concepts of "reasonable time." See *Jewett v. Commissioner*, 70 T.C. 430, 433–434 (1978), affd. 638 F.2d 93 (9th Cir. 1980), affd. 455 U.S. 305 (1982); *Fuller v. Commissioner*, 37 T.C. 147, 155 (1961).

Prior to the Supreme Court's decision in *Jewett v. Commissioner*, 455 U.S. 305 (1982), affg. 638 F.2d 93 (9th Cir. 1980), affg. 70 T.C. 430 (1978), there was a conflict between the Courts of Appeals for the Eighth and Ninth circuits as to when, in the case of a remainder interest which is contingent or vested subject to divestiture at the time of its creation, the "transfer" referred to in section 25.2511–1(c), Gift Tax Regs., occurs. The conflict was whether the "transfer" occurs when the interest is created or at a later time when the interest either vests or becomes possessory. Naturally, the disclaiming beneficiary who sought to fall outside the reach of the gift tax argued that the "transfer" did not occur until his interest either vested or became possessory so that the "reasonable time" period for disclaiming would not begin to run until that time. Compare the Ninth Circuit's opinion in *Jewett v. Commissioner*, 638 F.2d 93 (9th Cir. 1980), with the Eighth Circuit's opinion in *Keinath v. Commissioner*, 480 F.2d 57 (8th Cir. 1973).[11] In *Jewett v. Commissioner*, 455 U.S. 305 (1982), the

---

(A) the day on which the transfer creating the interest in such person is made, or

(B) the day on which such person attains age 21,

(3) such person has not accepted the interest or any of its benefits, * * *

[11]*Keinath v. Commissioner*, 480 F.2d 57 (8th Cir. 1973), revg. 58 T.C. 352 (1972), involved a taxpayer who was a remainderman of a testamentary trust created by the will of his father, who died in 1944. The trust provided his mother with a life interest and, upon her death, the trust remainder was to be divided equally between the testator's two sons. In the event that either son predeceased his mother, the life tenant, the deceased son's share was to be distributed to the son's child per stirpes. The taxpayer disclaimed his remainder interest within 6 months following his mother's death, which was approximately 19 years after the trust was created. The taxpayer and the Government agreed that the taxpayer had a vested remainder in one-half of the trust subject to divestiture only if he should predecease the life beneficiary of the trust. On these facts, the Eighth Circuit held that the taxpayer had a reasonable time after the death of the life beneficiary within which to disclaim his remainder and thus not be subject to the gift tax.

*Jewett v. Commissioner*, 455 U.S. 305 (1982), affg. 638 F.2d 93 (9th Cir. 1980), affg. 70 T.C. 430 (1978), involved a taxpayer who held a remainder interest in a testamentary trust established under the will of his grandmother, who died in 1939. The trust provided the taxpayer's mother with a life interst and, upon her death, the taxpayer was entitled to a share of the trust remainder if he survived his mother; if the taxpayer did not survive his mother, his share would be distributed to his issue per stirpes. During 1972, when the

Supreme Court resolved the conflict between the two circuits by holding that the "transfer" occurs at the time the interest is created.

The instant cases were tried and initially briefed prior to the Supreme Court's decision in *Jewett v. Commissioner, supra.* Since Adelaide, Amory, Jr., and James all disclaimed their interests in Elisabeth's Trust approximately 33 years after those interests were created, but shortly after Elisabeth's death, petitioners devoted a large portion of their original and reply briefs to arguing that the "transfer" within the meaning of section 25.2511–1(c), Gift Tax Regs., did not occur until the date of Elisabeth's death. According to petitioners, a "transfer" could not have occurred at an earlier point in time because Adelaide's, Amory, Jr.'s, and James's respective remainder interests in Elisabeth's Trust were "wholly contingent up until the very moment of Elisabeth's death." Since the Supreme Court in *Jewett* decided the "transfer" issue contrary to the view expressed by petitioners in their briefs, we allowed the parties to file supplemental briefs subsequent to that decision. Petitioners, in their supplemental brief, appear to concede the "transfer" argument advanced in their original and reply briefs. In any event, we conclude that the relevant "transfer" in the instant cases occurred on September 16, 1941, when Adelaide's, Amory, Jr.'s, and James's grandfather, Alanson B. Houghton, transferred assets to a testamentary trust for the primary benefit of Elisabeth (i.e., Elisabeth's Trust). *Jewett v. Commissioner, supra.*

Petitioners now devote all of their arguments to the claim that Adelaide, Amory, Jr., and James did not have "knowledge" within the meaning of section 25.2511–1(c), Gift Tax Regs., with respect to Eisabeth's Trust until late 1973 or 1974. Accordingly, Adelaide, Amory, Jr., and James contend that their disclaimers, made on May 15, 1974, June 6, 1974, and

---

taxpayer and his mother were 55 and 72 years of age, respectively, the taxpayer disclaimed his interest in the trust. Notwithstanding the fact that the taxpayer's interest at such time (i.e., during 1972) was subject to contingencies and had not yet become possessory, the Ninth Circuit held that the "transfer" within the meaning of sec. 25.2511–1(c), Gift Tax Regs., took place in 1939, when the taxpayer received a contingent remainder from his deceased grandmother's estate. Accordingly, the Ninth Circuit concluded that the taxpayer did not disclaim his interest within a reasonable period of time, and thus was subject to the gift tax.

June 7, 1974, respectively, were executed within a reasonable time after they acquired "knowledge" and, therefore, their disclaimers did not constitute indirect taxable gifts to their children. Respondent, on the other hand, maintains that Adelaide, Amory, Jr., and James all had "knowledge of the existence of the transfer" within the meaning of section 25.2511–1(c), Gift Tax Regs., in 1957, when they were personally served with Elisabeth's citation. Consequently, respondent contends that their disclaimers, approximately 17 years after the personal service upon them of Elisabeth's citation, were not executed within a reasonable time and thus constitute taxable gifts. We agree with respondent.

Petitioners argue that Adelaide, Amory, Jr., and James did not have "knowledge of the existence of the transfer" within the meaning of section 25.2511–1(c), Gift Tax Regs., until shortly after Elisabeth's death on March 2, 1974. Petitioners contend that a taxpayer must have "active knowledge not merely as to the existence of the trust but also as to the nature and value of the trust property and * * * [his] specific interest * * * therein" before the reasonable time period within which to disclaim should begin to run. Petitioners, however, cite no authority squarely in accord with their position.[12] Moreover, petitioners' position is contrary to the language of section 25.2511–1(c), Gift Tax Regs., which only speaks to "knowledge of the existence of the transfer." We decline petitioners' attempt to have us interpret this regulation by imposing additional conditions as to the knowledge requirement when such conditions are in no way supported by the clear language of the regulation.

Furthermore, to the extent that Adelaide, Amory, Jr., and James desired "knowledge not merely as to the existence of the trust but also as to the nature and value of the trust property and * * * [their] specific interest * * * therein,"

---

[12] In their supplemental brief, petitioners refer us to *Jewett v. Commissioner, supra,* and contend that therein the Supreme Court decided "the disclaimer of a remainder interest in a trust is subject to gift tax if it is not made within a reasonable time after the taxpayer has *actual knowledge of the specific terms of * * * [his] interest and of the nature and value of the trust property.*" (Emphasis added.) This quoted language, however, appears nowhere in the *Jewett* case. In *Jewett v. Commissioner, supra,* the Supreme Court very clearly stated that "*the narrow question presented* is whether the 'transfer' [referred to in sec. 25.2511–1(c), Gift Tax Regs.] * * * occurs when the interest is created or at a later time when the interest either vests or becomes possessory." (455 U.S. at 306; emphasis added.)

there were at least two avenues open to them. First, they could have examined the original Will of Alanson B. Houghton, which was admitted to probate in the Surrogate's Court of the State of New York.[13] Second, they could have consulted actuaries, attorneys, or their family corporation, Houghton Estates, to help them obtain more specific information about the nature and value of their interests in Elisabeth's Trust. We found Adelaide, Amory, Jr., and James to be intelligent individuals, and their testimony establishes that they had access to, and contact with, attorneys during 1957, when all of them were at least 21 years of age.[14]

Adelaide, Amory, Jr., and James were personally served Elisabeth's citation during 1957. The citation clearly listed the names of each family member having an interest in Elisabeth's Trust, including the names of Adelaide, Amory, Jr., and James. In addition, the citation clearly stated that such persons were interested in "a trust for the benefit of Elisabeth Houghton under Article Nineteenth, Paragraph I of the Last Will and Testament of Alanson B. Houghton." Thus, although Elisabeth's citation did not give specifics as to the exact nature and value of Adelaide's, Amory, Jr.'s, and James's interests in Elisabeth's Trust, section 25.2511–1(c), Gift Tax Regs., simply does not require that a disclaiming beneficiary have such knowledge before the reasonable time period within which to disclaim begins to run. The regulation requires "knowledge as to the existence of the transfer," and we think that once a disclaiming individual has knowledge that some property interest has been transferred to him, it would frustrate the application of the gift tax to allow him to sit on that knowledge interminably, decide upon whether or not he wants to disclaim his interest by considering events occurring as much as 17

---

[13]See N.Y. Surr. Ct. Proc. Act. (58A) secs. 2501, 2503 (Consol. 1967), which provides that every will admitted to probate shall be recorded at length by the clerk of the Surrogate's Court, and that all records of the court, other than those sealed, are open to inspection by any person at reasonable times. Petitioners have not alleged that the Will of Alanson B. Houghton was sealed and therefore unavailable for their inspection during 1957.

[14]In this connection, we note that the personal service of Elisabeth's citation upon Adelaide, Amory, Jr., and James during 1957 was done by attorneys Harold Ritter, Bela C. Tifft, and Edward B. Hoffman, respectively, during 1957. Adelaide, Amory, Jr., and James all testified to the effect that they do not recall whether there was any discussion concerning Elisabeth's citation with the aforementioned attorneys when they were personally served such citation.

years later, and avoid the gift tax if he decides to disclaim the interest.

Moreover, our conclusion herein is also supported by the gift tax provisions in the Internal Revenue Code and applicable legislative history. Section 2501 imposes a tax on the transfer of property by gift by any individual. Section 2511(a) provides that the gift tax "shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." The Senate[15] and House[16] reports state:

> The terms "property," "transfer," "gift," and "indirectly," are used in the broadest and most comprehensive sense * * *
>
> The words "transfer * * * by gift" and "whether direct or indirect" are designed to cover and comprehend all transactions * * * whereby, and to the extent * * * that property or a property right is donatively passed to or conferred upon another, regardless of the means or the device employed in its accomplishment.

In short, this legislative history reflects a clear intent on the part of Congress to apply the gift tax "in the broadest and most comprehensive sense." The tax is clearly broad enough to encompass all disclaimers, as they are an indirect way to gift property. See *Jewett v. Commissioner, supra* at 310. Thus, while section 25.2511–1(c), Gift Tax Regs., provides for an exception to the general rule that disclaimers are indirect gifts subject to the gift tax, we do not think that an expansive reading of the exception (hereinafter referred to as the disclaimer exception) is consistent with the congressional intent underlying the gift tax. As the Supreme Court reaffirmed in *Jewett v. Commissioner*, 455 U.S. 305, 310 (1982), the purpose of the gift tax is to compensate for the avoidance of estate taxes through inter vivos gifts. See also *Estate of Sanford v. Commissioner*, 308 U.S. 39, 44 (1939). By making disclaimers, Adelaide, Amory, Jr., and James removed their respective interests in Elisabeth's Trust from their taxable estate and conferred a gratuitous benefit upon their children. While their actions were unequivocal and effective under New York law, petitioners should not be able to circumvent the gift

---

[15]S. Rept. 665, 72d Cong., 1st Sess. 39 (1932).

[16]H. Rept. 708, 72d Cong., 1st Sess. 27, 28 (1932).

tax when it is clear that Adelaide, Amory, Jr., and James were served notice during 1957 that they had an interest in Elisabeth's Trust and did not disclaim their interests therein until 17 years later.[17]

. By trying to impose more conditions to the knowledge requirements than section 25.2511–1(c), Gift Tax Regs., requires on its face, petitioners seek to expand the disclaimer exception contained therein to the point where such exception would practically swallow the general rule that disclaimers are indirect gifts subject to the gift tax.[18] In contrast, respondent's position, that the personal service of Elisabeth's citation constitutes "knowledge of the existence of the transfer" within the meaning of section 25.2511–1(c), Gift Tax Regs., is based upon an interpretation of the disclaimer exception contained therein which adheres to the clear language of the regulation and is perfectly consistent with Congress's clear intent that the gift tax be applied "in the broadest and most comprehensive sense."

In conclusion, we hold that Adelaide, Amory, Jr., and James made taxable gifts when they executed disclaimers of their respective interests in Elisabeth's Trust. Since the value of those gifts cannot be ascertained on the record before us,[19]

*An appropriate order will be issued.*

---

[17]We have found that Adelaide, Amory, Jr., and James each read Elisabeth's citation during 1957. While certain arguments advanced by petitioners in their original and supplemental briefs may be read to imply otherwise, we find that the record in these cases does not support a finding that Adelaide, Amory, Jr., and James failed to read Elisabeth's citation during 1957. The testimony of Adelaide, Amory, Jr., and James with respect to their recollection of the time when they were served with Elisabeth's citation was vague and uncertain. To the extent that petitioners have argued to the contrary they have simply failed to meet their burden of proof. See Rule 142(a), Tax Court Rules of Practice and Procedure.

[18]While we recognize that the Supreme Court's holding in *Jewett v. Commissioner, supra,* does not interpret the term "knowledge" contained in sec. 25.2511–1(c), Gift Tax Regs., we think that, on the facts of the cases before us, petitioners' position represents an attempt to make an end run on the rationale of that case by devising a strained and unsupported interpretation of that term.

[19]See note 7 *supra.*